# State of Vermont v. Robert Barr

[ 223 A.2d 462 ]

June Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 4, 1966

*Patrick J. Leahy,* State's Attorney, for the state.

*R. Allan Paul* for respondent.

**Shangraw, J.** This prosecution was brought by the State's Attorney for Chittenden County on an information charging the respondent with the crimes of (1) kidnapping, (2) burglary in nighttime, (3) conspiracy to rob, and (4) being an accessory to a kidnapping.

Respondent was tried during the March Term, 1965 and the jury found the respondent guilty of the first three counts—that is, kidnapping, burglary in nighttime, and conspiracy to rob. Respondent was adjudged guilty on the verdicts and sentences to the State Prison at Windsor, Vermont, were imposed. Respondent has since been confined in the State Prison.

The respondent has appealed. The assignments of error relate to the reception of certain evidence, to the denial of motions made prior to trial, during trial, and following the verdicts.

On May 22, 1965, at about 3:00 A.M., Ruth Clark and her daughter, Donna Clark, returned to their residence at 104 Lakewood Parkway, Burlington, Vermont, which was owned by one Merle Wood. They found four masked persons in the house. These persons were under the impression that Ruth Clark was Merle Wood's wife and demanded to know when he would arrive home. Ruth explained that she was not married to Merle Wood and that he probably could be located at the Country Store, Inc., Winooski, Vermont.

One of the men told Mrs. Clark that they had come for Merle Wood's money, and that she should telephone Wood and convince him to come to 104 Lakewood Parkway. In the event that Wood would not come, Mrs. Clark should tell Wood that she was coming over to

the Country Store to talk to him about something urgent. Mrs. Clark was to tell Wood that he was to let her into the Country Store, when she arrived.

Mrs. Clark made the telephone call to Wood and he said that he would let her in when she arrived. Three of the men and Mrs. Clark drove to the Country Store and knocked on the door. However, Wood, who was sleeping in his office at the store, had fallen asleep and did not respond to Ruth's knock. Mrs. Clark and the three men returned to 104 Lakewood Parkway where the fourth man, the respondent, had remained to take care of Ruth Clark's children.

Mrs. Clark was then told to telephone Wood and say that she was coming over again. Wood agreed to let her into the store but again he fell asleep after the telephone conversation and did not respond to her knocks on the outer door of the store. The same three men and Ruth again returned to 104 Lakewood Parkway where the fourth man had again remained with the children.

Ruth was told to make a third telephone call to Wood which she did. Wood again agreed to let her into the store. After the call, Wood unlocked the outer of the two doors giving access into the Country Store. The inner door was a glass door which Wood left locked.

The same three men and Mrs. Clark drove to the Country Store. Ruth and at least two of the men entered the outer door and attempted to open the inner glass door which was still locked. Wood observed Mrs. Clark and the two strange men who were with her through a one-way mirror in his office which looked into the space between the two doors. Wood saw the two masked men who were with Mrs. Clark break the glass of the inner door with what appeared to be a revolver.

Wood then called the Winooski Police Department, and taking a gun, left his office to hide in the interior of the store. When the men saw that Wood was not in his office, they took Ruth and fled the store.

They were driving away from the store when a Winooski police car arrived and gave chase. One of the men was driving the car owned by Wood and used by Ruth Clark. During the course of the chase, the three men attempted to return to 104 Lakewood Parkway to pick up the fourth man who was staying with the children. The Winooski police fired several shots at the fleeing men. The noise of the sirens

and the shots alerted the fourth man at 104 Lakewood Parkway and he fled the house.

On the morning of May 22, 1965, the respondent was arrested without a warrant by an officer of the Winooski Police Department as the respondent was walking on a road in the town of Colchester, Vermont. On the basis that respondent was the fourth man, the man who stayed with the Clark children at 104 Lakewood Parkway during the incident described, the information now considered was issued by the State's Attorney, resulting in the prosecution and conviction of the respondent.

Count IV of the information charging the respondent with being an accessory to a kidnapping, a violation of 13 V.S.A. §1403 was, on motion of the respondent, dismissed before trial with exceptions to the State. The action of the trial court in granting this motion not having been briefed by the State is waived, and is not here considered.

The remaining counts of which respondent was convicted are as follows:

"COUNT I.

On to wit, the 22nd day of May, 1965, did then and there without legal authority forcibly confine another person, to wit, Ruth Clark, within this State against her will and further held the said Ruth Clark to service against her will by forcing her to make telephone calls to the Country Store, Incorporated, and by forcing the said Ruth Clark against her will to proceed to Winooski and attempt to gain entrance to the Country Store at a time when the said Country Store, Inc., was closed for business, all in violation of Section 2401, Title 13, V.S.A.

COUNT II.

On to wit, the 22nd day of May, 1965, did then and there in the nighttime and with intent to commit a felony therein, to wit, kidnapping, a felony, feloniously break and enter a dwelling house owned by Merle Wood, and occupied by Ruth Clark, situated at 104 Lakewood Parkway within the said City of Burlington, County of Chittenden, and in violation of Section 1201, Title 13, V.S.A.

COUNT III.

On to wit, the 22nd day of May, 1965, did conspire together with three other persons, to wit: Joseph W. Cabrera, William

Toomey, and Albert George Little for the purpose and with the intent to violently and forcibly rob a corporation, to wit: The Country Store, Incorporated, a Vermont corporation doing business in Winooski in the County of Chittenden, all in violation of Section 1401, Title 13, V.S.A."

In the State of Vermont only crimes punishable by death or by imprisonment in the state's prison for life are required to be instituted by grand jury indictment. 13 V.S.A. §5651. Others may be prosecuted by a state's attorney's information, as was done here. 13 V.S.A. §5652.

Since the Fifth Amendment of the United States Constitution requires that "infamous crimes" be prosecuted by grand jury indictment, the respondent moved for a dismissal of all counts in the information on the ground that they charged infamous crimes. He contends that the Fifth Amendment grand jury requirement is now binding on the states as well as the federal judicial system because of the recent extensions of the due process clause of the Fourteenth Amendment.

This position is anticipatory in that the United States Supreme Court has not rendered any decision imposing the grand jury requirement of the Fifth Amendment on state procedure. The test of due process as expressed in decisions under the Fourteenth Amendment has been one reviewing the substantive effect of the state's implementation of various civil rights. Variations in procedure will not constitute a violation of the Bill of Rights of the United States Constitution, as applied to the several states. *Snyder* v. *Commonwealth of Massachusetts,* 291 U.S. 97, 104, 78 L.Ed. 674, 677. Vermont has already met that test. The approval given to Vermont procedure by that court in *Hodgson* v. *Vermont,* 168 U.S. 262, 42 L.Ed. 461, 464, reviewing *State* v. *Hodgson,* 66 Vt. 135, 28 Atl. 1089, is still the law of the land. *Hurtado* v. *California,* 110 U.S. 516, 28 L.Ed. 232, 239. See also, *Palko* v. *Conn.,* 302 U.S. 319, 325, and concurring opinion Frankfurter, J., *Adamson* v. *Cal.,* 332 U.S. 46, 91 L.Ed. 1903, 171 A.L.R. 1223, 1234, 1235.

The constitutionality of 13 V.S.A. §5652 was settled in the case of *State* v. *Stimpson,* 78 Vt. 124, 62 Atl. 14. In that case this Court held that common law felonies were not required, by any provision of our own State Constitution, to be prosecuted by indictment,

and that section 5652, *supra,* then V.S. §1867, was not unconstitutional.

ARTICLE 10th of the Vermont State Constitution provides in part:

". . . nor can any person be justly deprived of his liberty, except by the law of the land, or the judgment of his peers. . ."

Notwithstanding the holding in *State* v. *Stimpson, supra,* respondent urges that Article 10th should be reevaluated to bring it into conformance with the increased concern for the rights of the individual.

We recognize that the concepts of due process are subject to constant change. However, we are not now disposed to overturn established construction of the fundamental law, long settled by paramount judicial decisions of both the Vermont and the United States Supreme Courts. The motion for a dismissal of the information was properly denied.

The respondent made timely objections to the admission of evidence which is claimed to have been obtained by an unreasonable search and seizure of a 1965 Chrysler automobile. This automobile was first observed by area residents Friday night, May 21st, 1965, parked on Sandy Lane in Burlington, Vermont.

It is to be recalled that the alleged offenses occurred in the early morning of May 22, 1965. The respondent was arrested in the forenoon of that date. The automobile was not searched until the following day. During trial it was stipulated by the respondent and the State that this automobile was searched and seized without a warrant, and that the search and seizure was not incidental to a lawful arrest.

The Fourth Amendment of the United States Constitution in part provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated."

It is now declared law that in a state prosecution, the Fourth and the related Fourteenth Amendments bar the use of evidence secured by police officers through an unreasonable search and seizure. *Mapp* v. *Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684. This

principle has been recognized in *State* v. *Ball*, 123 Vt. 26, 28, 29, 179 A.2d 466.

The Fourth Amendment to the United States Constitution does not condemn all searches and seizures made without a warrant. It prohibits only an unreasonable search and seizure. *Mapp* v. *Ohio, supra*. There is no fixed formula for determining what is an unreasonable search. Each case must be resolved on its own facts. *U.S.* v. *Rabinowitz,* 339 U.S. 56, 94 L.Ed. 653, 657; *Carroll* v. *U.S.,* 267 U.S. 132, 147.

This leads us to the question as to whether the search of the automobile in question was unreasonable under the circumstances then existing. The evidence permits the inference that at the time of the search the automobile had been abandoned by the respondent and his co-conspirators when their scheme was frustrated by police intervention, with no intention of returning to the property.

One who abandons or discards property cannot complain of the later seizure of such property by the police or of its use against him in criminal proceedings. *Hester* v. *U.S.,* 265 U.S. 57, 68 L.Ed. 898; *Henderson* v. *Warden of Maryland Penitentiary,* 237 Md. 519, 206 A.2d 793, 795; *Buettner* v. *State,* 233 Md. 465, 468; See also, *Abel* v. *U.S.,* 362 U.S. 217, 4 L.Ed. 2d 668, 687.

In inspecting the abandoned vehicle, the police were merely performing their duty. The presence of the unattended automobile on Sandy Lane for an extended period of time required investigation to determine whether it was in fact stolen property, or, if perhaps some misadventure had befallen its owner. It is our view, and we so hold, that the search of the automobile was not unreasonable. The search and seizure undertaken in this instance does not offend constitutional guarantees.

Count I charges the crime of kidnapping, a violation of 13 V.S.A. §2401. It is the respondent's contention that this count is defective in that it charges four separate offenses in the same count. This issue was first presented to the trial court before trial by a motion to dismiss, which was denied. The respondent timely moved that the State be required to elect on which offense it would proceed. This request was also denied.

Chapter 1, Article 10 of the Vermont Constitution provides that "in all prosecutions for criminal offenses a person hath a right to demand the cause and nature of his accusation." In referring to this provision this Court, in the case of *State* v. *Margie,* 119 Vt. 137, 141, 120 A.2d 807, 810, made this statement: "Such information must be found in the complaint or other form of accusation to which he is called upon to plead, unaided by extrinsic facts. All that is required is that the charge be set forth with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense, and if the trial goes against him, to plead his conviction in a subsequent prosecution for the same offense." *State* v. *Cliffside, Inc.,* 120 Vt. 265, 266, 138 A.2d 310; *State* v. *Parker,* 123 Vt. 369, 371, 189 A.2d 540.

13 V.S.A. §2401, reads in part:

"A person who, without legal authority, forcibly or secretly confines or imprisons another person within this state against his will. . . . or forcibly seizes or confines or inveigles or kidnaps another person with intent to cause him to be secretely confined or imprisoned in this state against his will. . . . or in any way held to service against his will, shall be imprisoned . . . ."

As here, it is not uncommon for a statute to denounce as an offense two or more separate and distinct acts, things, or transactions enumerated therein in the disjunctive, and it appears to be the general rule that in such case the whole may be charged conjunctively and a respondent found guilty of either one. Wharton's Criminal Law, vol. 4, §1798, pp. 630-631. The rule as laid down in Wharton's Criminal Law, *supra,* is thus expressed: "if the statute enumerates the offenses disjunctively, the indictment should charge them conjunctively." This view is found in *State* v. *Woodward,* 25 Vt. 616, 618. See *State* v. *Ciocca,* 125 Vt. 64, 72, 209 A.2d 507.

Count I is in the conjunctive and charges only one offense—that is kidnapping. The elements constituting the charge are precisely spelled out and thus enabled respondent to intelligently prepare a defense. Where one offense is a necessary element in, and constitutes a part of, another, and both are in fact but one transaction, an acquittal or conviction of one is a bar to a prosecution for the other. *State* v. *Parker, supra,* 371, citing *State* v. *Deso,* 110 Vt. 1, 11, 1 A.2d

710. We hold that the conjunctive language of Count I was proper and charged one offense. No error appears.

Respondent claims that Count II is fatally defective in that it fails to name the person intended to be kidnapped. This issue was presented to the trial court by motions for a directed verdict of acquittal, and a motion in arrest of judgment. These motions were denied. In support of this claim he relies to a large extent on the holding in the case of *State* v. *Ciocca,* 125 Vt. 64, 71, 209 A.2d 507. In that case by Count II the respondent was charged with endeavoring to incite and did incite and procure and hire other persons to commit a felony, to wit arson. The complaint failed to name the person or persons whom the respondent endeavored to incite, etc., and this court held that such failure rendered this count fatally defective.

The Ciocca case is distinguishable from this case. In Count II of the Ciocca case the gravamen of the offense was to "incite . . . . another person." There, the respondent was charged with doing an act which he could not do except by dealing with, and for, others. This required collaboration with others.

Here the gravamen or essence of Count II complained of is not actual kidnapping. Whether the crime of kidnapping actually occurred is not controlling on the question of a violation of the statute involved, 13 V.S.A. §1201.

With the breaking and entering a dwelling in nighttime once established, a violation of the statute then remained a matter of proof as to whether there was an intent to commit the felony of kidnapping.

In considering the evidence in the light most favorable to the State, the evidence tends to show that the four men broke into 104 Lakewood Parkway expecting to find Merle Wood, and also expecting that they would be required to force him to take them to the store where he kept his money in a safe. There is no evidence that the men expected to find any money in the house, as shown by the absence of any search on their part. From this it may be reasonably inferred that the original plan was to kidnap Mr. Wood and either take him to the Country Store, Inc., or at least to take him to the place where he kept his money.

The plan of the offenders was to relieve Mr. Wood of his money. It may well be that at the time of the breaking and entering that the respondent and his companions were unaware of the person or persons, other than Mr. Wood, with whom they might be confronted, or

required to kidnap if their purpose was to be accomplished. Whether Mr. Wood, Mrs. Clark, or other persons were to be kidnapped is not a controlling factor. Was it their intention to kidnap any person who stood in their path, not necessarily a particular person? The evidence demonstrates that this was their intent. Not finding Mr. Wood at 104 Lakewood Parkway they immediately held Mrs. Clark to service against her will.

Here, the allegation of the ultimate felony intended need not, however, be set out as fully and specifically as would be required in an indictment for the actual commission of that felony. *State* v. *Hodgdon,* 89 Vt. 148, 150, 94 Atl. 301; 13 Am. Jur. 2d Burglary, §36. See, *In Re DeCelle,* 125 Vt. 467, 469, 218 A.2d 714.

We hold that the naming of the intended victim to be kidnapped was not required by Chapter I, Article 10th of the Vermont Constitution which provides that "in all prosecutions for criminal offenses a person hath a right to demand the cause and nature of his accusation."

Count I charges the respondent with the crime of kidnapping Ruth Clark. By Count II the respondent is charged with burglary in the nighttime with intent to commit kidnapping. Respondent claims that there is no evidence that he was a principal offender as charged in these two counts. In substance, it is urged that he was only a watchman and babysitter to prevent the Clark children from raising an alarm. He therefore urges that he was only an aider and abettor, and should have been so charged, not as principal, but as an accessory under 13 V.S.A. §3, which reads:

"A person who aids in the commission of an offense punishable by death or imprisonment in the state prison shall be punished as principal."

To what extent did the respondent participate in the incidents of which we are concerned? Without burdening the opinion with unnecessary detail and facts, it is apparent from the transcript that the respondent and his three companions were all in the same boat. All four persons with their faces masked appeared at the home of Ruth Clark with the preconceived plan of robbing Merle Wood of his money. During the episode in question these four masked men conferred with each other on certain details, including supervision of

the children by the respondent. It may be reasonably inferred that each were cognizant of the general plan, and the part each were to play, in attempting to accomplish the purpose for which they came. To this end, Mrs. Clark was held to service against her will.

As stated in *State* v. *Orlandi, et al,* 106 Vt. 165, 171, 170 Atl. 908, "Where several persons combine under a common understanding and with a common purpose to do an illegal act, each one is criminally responsible for the act of each and all who participate with him in the execution of the unlawful design." See, *State* v. *Bosworth,* 124 Vt. 3, 10, 197 A.2d 477.

Here the respondent played his part as one of the principals by assisting in the commission of the offenses of which he was charged and found guilty. Respondent's claim that he was only an aider and abettor is not factually or legally supported by the record.

Count III charges a conspiracy to rob the Country Store, Inc. With the foregoing in mind, it is unnecessary to further detail the evidence in support of this charge. The evidence supports conviction on each of the three counts.

*The convictions are sustained. Judgments affirmed.*