## State of Vermont v. Ralph Bissonette, Jr.

[488 A.2d 1231]

No. 83-422

Present: Hill, Underwood, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 1, 1985

*John J. Easton, Jr.,* Attorney General, *Edwin L. Hobson* and *Robert V. Simpson, Jr.,* Assistant Attorneys General, and *Jennifer Rood,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Jarvis & Kaplan,* Burlington, for Defendant-Appellant.

Gibson, J. Defendant appeals his conviction, under 13 V.S.A. § 2002, of obtaining money or other property by false pretenses. We affirm.

Viewed in the light most favorable to the State, *State* v. *Lupien,* 143 Vt. 378, 381, 466 A.2d 1172, 1174 (1983), the evidence establishes the following facts: Mrs. Clara Carlson, age 93, shared her South Burlington home with her sister, Mrs. Nellie Irish, age 87. On July 6, 1982, the roof of her home was in good repair. That evening a truck drove up and parked nearby. A watchful neighbor saw three men emerge from it, including one whom he recognized as Norman Bevins. When

the men disappeared up Mrs. Carlson's driveway, the neighbor called the police, but the men soon reappeared and drove off.

The following morning, another neighbor noticed several shingles missing from Mrs. Carlson's roof that had not been missing the day before. That morning, three men including the defendant and Norman Bevins visited the house and falsely stated that they had been working across the street and had noticed shingles missing from her roof. They said that immediate repair was necessary. Mrs. Irish told the men that no work could be done without the approval of Helen Lawrence, a younger woman who helped supervise the women's affairs and who had power of attorney for Mrs. Carlson. Mrs. Irish telephoned Mrs. Lawrence and repeated the men's recommendations, but Mrs. Lawrence refused to allow the men to make the repairs. She told Mrs. Irish to seek additional bids.

After Mrs. Irish hung up and informed the men of Mrs. Lawrence's instructions, they asked to speak directly to Mrs. Lawrence, so Mrs. Irish dialed Mrs. Lawrence again and handed the phone to defendant. Mrs. Lawrence's end of the line then went dead, but at the Carlson home, in the presence of the two sisters, defendant pretended to discuss the repair with Mrs. Lawrence. He eventually hung up and falsely stated that Mrs. Lawrence had approved the work. Thereupon, Mrs. Carlson said, "all right," and went for her pocketbook. Mrs. Irish explained to her older sister that the men wanted $1800, which required a trip to the bank. Mr. Bevins drove the women to the bank, where, at his instruction, a certified check drawn to "James Blackmer" was issued. The check was given to Mr. Bevins and cashed later that day.

The State contended that defendant and his companions used Blackmer's name and driver's license in obtaining and cashing the check. The jury apparently disbelieved testimony by the real James Blackmer (a brother-in-law of Norman Bevins) that he alone had randomly driven down Mrs. Carlson's street, noticed her missing shingles, sought the job, done the work along with two strangers whom he hired for a few hours and never saw again, and then cashed the check.

## I.

Defendant first challenges the identification procedure by which, before trial, an array of 27 photographs was presented

to several witnesses. The photographs were shown to Mrs. Irish one at a time, rather than all at once, and she identified defendant in the sixth picture shown to her. Thereafter, at trial, she identified defendant again as he was seated with counsel. Defendant argues that, considering the inherent unreliability of photo arrays, *United States* v. *Ash*, 461 F.2d 92, 103 (D.C. Cir. 1972), *reversed on other grounds*, 413 U.S. 300 (1973), the court should have suppressed the photo array and refused to permit the in-court identification by Mrs. Irish.

The test established by the United States Supreme Court to determine the admissibility of out-of-court identifications mandates assessment of "the totality of the circumstances" in deciding whether the procedure was unnecessarily suggestive and thereby conducive to irreparable mistaken identification. *Manson* v. *Brathwaite*, 432 U.S. 98, 106, 114 (1977) ; see also *Simmons* v. *United States*, 390 U.S. 377, 384 (1968) (similar ad hoc determination for pretrial photographic identification procedures).

Three grounds for suppression of the identification were raised below by defendant and preserved on appeal. He claims first that all photographs except those of himself and his codefendants were of young men. He also argues that confusion displayed by Mrs. Irish during cross-examination at the suppression hearing tainted the identification. Finally, he contends that the procedure employed in displaying the photographs was unnecessarily suggestive, and thereby conducive to irreparable mistaken identification.

On the age issue, the trial court disagreed with defendant's contention that defendant stuck out "like the proverbial sore thumb." The 27 photographs comprising the photo array depict men both younger and older than defendant as well as men both with and without beards and mustaches. See *United States* v. *Gantt*, 617 F.2d 831, 840 (D.C. Cir. 1980) (rejecting argument that defendant "was the only one of the six shown . . . which even remotely possessed the physical characteristics of the suspect"). We conclude, upon review, that the evidence does not support defendant's contention and that, therefore, the trial court's finding was not erroneous.

 Defendant's second argument, that Mrs. Irish was confused while testifying, may provide ammunition for cross-examination during trial, but it is not germane to the test set forth in *Manson, supra,* for admission of pretrial identifications. Among the factors to be weighed is "the level of certainty demonstrated *at the confrontation." Manson, supra,* 432 U.S. at 114 (emphasis supplied). Mrs. Irish's emphatic identification of defendant at the time she viewed the photographs was not refuted. Defendant's objection is more properly addressed to the weight of the evidence, not its admissibility. See *id.* at 116. The trial court properly overruled the objection.

Defendant's last argument, that the sequential presentation of photographs, in which Mrs. Irish identified one of the three individuals (Bevins) in the third picture of the 27 to be shown, and then identified defendant in the sixth one presented, made defendant part of what was in effect a three-person lineup, and was unnecessarily suggestive, and thereby conducive to irreparable mistaken identification, also fails. The trial court found that, although the photographs were shown one at a time, there was no evidence that the officer made any suggestions emphasizing one photograph over another. The court concluded that there was no substantial difference between showing one photograph at a time and showing all 27 at once, and it concluded that the process was not suggestive.

In the case of *United States* v. *Bubar,* 567 F.2d 192, 197 (2d Cir.), *cert. denied,* 434 U.S. 872 (1977), the United States Court of Appeals for the Second Circuit, in dictum, observed that the process of presenting one-by-one a series of photographs possessed the characteristics of both a constitutionally permissible spread and a potentially impermissibly suggestive procedure. In *Smith* v. *Estelle,* 531 F.2d 260 (5th Cir. 1976), the victim was shown four photographs, then several days later shown a fifth photograph in which she definitely identified the defendant; the court held that, while the photographic identification procedure might have been handled more carefully, it was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 262 (quoting *Simmons* v. *United States, supra,* 390 U.S. at 384).

While we agree that, in an array, the attention paid by a witness to one photograph in disregard of others is uncontrolled, we disagree that what occurred in this case was in effect a three-person, or even a six-person, array. Defendant has not shown, even hypothetically, how sequential rather than simultaneous presentation is per se unnecessarily suggestive, or even more suggestive, than a "spread." He cites no authority for his argument. We affirm the trial court's conclusion that the procedure was not impermissibly suggestive.

## II.

Defendant next contends that the court erroneously denied his motion for acquittal, claiming there is no evidence of any false statement made by him on which Mrs. Carlson actually relied. The evidence is to the contrary.

In addition to uttering falsehoods regarding the job across the street and the need for immediate repair, the evidence establishes that defendant pretended to talk with the woman whose approval was needed and then misrepresented her approval. In immediate response to that misstatement, Mrs. Carlson went to the bank and withdrew money from her account. There can be no doubt that the victim acted in reliance on defendant's falsehoods.

Defendant maintains that it was not defendant's pretended phone conversation, but the directions given by Mrs. Irish to Mrs. Carlson after defendant said Mrs. Lawrence had approved the work, that induced Mrs. Carlson to part with her money. He cites several Texas decisions under former Texas statutes as support for the proposition that proof of reliance solely upon the false pretense is necessary for conviction. *Ashford* v. *State,* 410 S.W.2d 433, 434 (Tex. Crim. App. 1966); see also *Kinder* v. *State,* 477 S.W.2d 584, 586 (Tex. Crim. App. 1971); *Cleveland* v. *State,* 438 S.W.2d 807, 808 (Tex. Crim. App. 1969); *Thornton* v. *State,* 171 Tex. Crim. 565, 567, 352 S.W.2d 742, 743 (Tex. Crim. App. 1962). These cases require that the falsehood be *the* "inducing cause" for the release of property.

The Texas cases, however, are not factually analogous to

this case. In each, the conviction was reversed because the victim had also performed and relied upon his own independent investigation. In contrast, Mrs. Irish's instructions to her sister in the case before us, which defendant argues were at least an "inducing cause," were at best repetitions, retransmissions or "translations" naturally resulting from defendant's misrepresentations.[1]

■ One purpose of 13 V.S.A. § 2002 is to protect the weak and susceptible from being preyed upon. It is therefore sufficient that the evidence permitted the jury to conclude beyond a reasonable doubt that Mrs. Carlson acted in material reliance upon defendant's falsehood. We agree with the view expressed in *State* v. *Cooke,* 59 Wash. 2d 804, 809, 371 P.2d 39, 42 (1962): "It is well settled that the victim of fraud need not have relied solely upon the false representation in parting with his money, but only that he relied materially upon it."

Defendant also challenges the sufficiency of the evidence of reliance, arguing that Mrs. Carlson was not mentally competent to rely on his representations and that, absent such reliance, defendant could not be convicted. Mrs. Carlson did not testify at the trial, which took place six months after the event, her health having deteriorated in the interim. Defendant claims that he was prejudiced in his effort to prove her incapacity by the court's refusal to order that she undergo psychiatric examination.

■ Defendant did not present any evidence that an evaluation of Mrs. Carlson could measure her capacity for reliance at an earlier time. Defendant also offered no supporting authority for the proposition that a court may order psychiatric examination of a nontestifying victim. Even those states which permit a court to exercise its discretion, in the absence of a statute, to order psychiatric examination of the complainant in a rape case do not extend similar discretion regarding nontestifying witnesses in nonrape cases. See survey of jurisdictions

---

[1] Nor is defendant's citation of *State* v. *Mauck,* 270 N.W.2d 56, 58–59 (S.D. 1978), apposite. The "false pretense" in that case was a bad check, thus requiring that the reliance be upon "the promise of defendant to make payment in the future."

in 3A J. Wigmore, Evidence § 924a (Chadbourn rev. 1970) (1984 supp. at 8–9). Concluding, as we do, that the extrinsic evidence of reliance was clear, defendant's justification for a psychiatric evaluation is outweighed by the gross intrusion that would have been imposed upon Mrs. Carlson. In these circumstances, the trial court was justified in denying defendant's request.

■ The judge instructed the jury that the State must prove, beyond a reasonable doubt, "that there was reliance, that the person to whom the lie was delivered or sent relied on that statement." Defendant argues that his statement to Mrs. Irish cannot be used to convict him of defrauding Mrs. Carlson, to whom the false statement was not directed. Thus, he argues, criminal intent as to the victim is lacking. We find little merit in the argument that defendant never directed his statement to Mrs. Carlson. Even were his view of the facts accepted, that the statement was directed to Mrs. Irish, defendant would still be culpable where he knew and intended that the false statement would be passed on to Mrs. Carlson and where he intended thereby to induce her to part with her money. See *Bolet* v. *United States*, 417 A.2d 386, 393 (D.C. 1980) (adopting trial court decision and affirming fraud conviction where misrepresentation was communicated through an "innocent alter ego").

■ Defendant also claims that the court's illustration, in which a statement was transmitted indirectly through an interpreter, ignored other elements essential for conviction. The example to which defendant objects was clearly delivered in the context of explaining only the element of communication. The court instructed in detail on every aspect of all the required elements of the crime, stressing that each was to be proven beyond a reasonable doubt; it highlighted individual elements with illustrations it felt would help the jury understand the law to be applied. In the context of its thorough instructions, the court was not required, each time it focused on one element, to clutter its illustrations with references to every other element. We find no error in the illustrations used in the court's charge.

## III.

Defendant next argues that the court below erred in not granting his motion for judgment of acquittal, contending that, because there was no evidence that he received property, an essential element in the crime of false pretenses, the State had to prove a common plan to do an illegal act in order to attribute to defendant the receipt of property by another. He claims that the false representation made after the pretended phone call was, even if true, entirely unplanned, thereby failing the *"Barr-Orlandi* test." See *State* v. *Barr,* 126 Vt. 112, 122, 223 A.2d 462, 469 (1966) (affirming conviction where defendant conferred with others and each was "cognizant of the general plan, and the part each [was] to play, in attempting to accomplish the purpose for which they came") ; *State* v. *Orlandi,* 106 Vt. 165, 171, 170 A. 908, 910 (1934) (all who knowingly and intentionally participate in the commission of a misdemeanor may be convicted as principals).

The *Barr-Orlandi* test, as discussed in *State* v. *Sears,* 130 Vt. 379, 296 A.2d 218 (1972), does not require that all factual eventualities of the crime be planned, merely that a "preconceived plan" existed. In *Sears,* this Court held that "presence of a preconceived plan with a common criminal objective, plus participation in its accomplishment to some substantial measure, is enough to support an information charging such a participant as a principal." *Id.* at 382, 296 A.2d at 220.

After a thorough description of the six elements of 13 V.S.A. § 2002 that are required to be proved beyond a reasonable doubt, the court presented the so-called *"Barr-Orlandi"* "preconceived plan" instructions to the jury. Defendant did not object to the court's instructions. Therefore, the issue on review is simply whether a jury could reasonably conclude beyond a reasonable doubt that a preconceived plan existed in which defendant participated.

In the present case, the facts clearly reflect defendant's participation in a previously planned criminal endeavor. The visits by several men, the disappearance of shingles, defendant's false statements that the men had been working across the street and that immediate repair was necessary, and his fake telephone conversation with Mrs. Lawrence, are

more than sufficient for a reasonable jury to have concluded beyond a reasonable doubt that defendant approached the Carlson home, having planned to separate by some unlawful means the inhabitants from their money. Here, as in *Barr, supra,* 126 Vt. at 122, 223 A.2d at 470, defendant "played his part as one of the principals by assisting in the commission of the offens[e] of which he was charged and found guilty." The court properly denied defendant's motion for judgment of acquittal.

## IV.

Finally, defendant challenges the trial court's admission of evidence of defendant's prior bad acts without a prior determination by the court under V.R.E. 404(b) and 403.[2] Defendant initially asserts a right to pretrial rulings excluding evidence of "bad acts," which he had hypothesized the State might present in rebuttal to defendant's case. By an in limine motion, defense counsel expressed concern over potential admission of evidence of prior crimes and bad acts. The State replied that it would be asking only about previous associations between defendant and others, and not about prior crimes or bad acts. In those circumstances, we believe the court was justified in waiting for the case to unfold and in choosing to consider objections on a question-by-question basis.

Review of the transcript reveals that the State, in cross-examining both Blackmer and the defendant, carefully avoided allusions to prior crimes or bad acts of defendant; its questions about Blackmer's use of false names only repeated evi-

---

[2] V.R.E. 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

V.R.E. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

dence admitted earlier without objection. Cf. *Leonard* v. *Henderson,* 118 Vt. 29, 37, 99 A.2d 698, 703 (1953).

When the State began asking defendant about previous jobs, defendant objected only on the ground that the matter was collateral. Thus, neither the State's nor the court's attention was drawn to any concern that the jury might infer that the prior jobs had been fraudulent, thereby leading the jury to conclude that defendant was a bad man who therefore had committed the crime charged.

■ We find no error in the trial court's allowance of the State's questions. Defendant's objection to the evidence as "collateral" did not raise and does not preserve an objection under V.R.E. 404(b). V.R.E. 103(a) provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) . . . a timely objection . . . appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; . . . .

■ There are three primary purposes for objections: to let the opponent correct the error, to inform the court so it can rule intelligently and quickly, and to reduce the necessity for reversal and new trial. See 1 Weinstein's Evidence ¶ 103[01], at 103–6 (1982). "Rule 103 adopts Wigmore's position that a specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal." *Id.* ¶ 103[02], at 103–22 to 103–23 (footnote omitted) ; see, e.g., *Jay Edwards, Inc.* v. *New England Toyota Distributor, Inc.,* 708 F.2d 814, 823 (1st Cir.), *cert. denied,* 464 U.S. 894, 104 S. Ct. 241 (1983) (where defendant objected, unsuccessfully, only on relevancy grounds, court would not reverse on grounds of prejudice where evidence was not completely irrelevant and defendant failed to alert trial court to prejudice theory).

We find no error in the admission of the evidence.

*Affirmed.*