**State of Vermont v. John Allen**

[507 A.2d 975]

No. 83-085

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed February 14, 1986

*Raymond G. Bolton,* Bennington County State's Attorney, and *Ralph H. Sheppard,* Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Underwood, J.** ■ This appeal requires us to determine whether the presentment for payment of a third party's check by a person who knows payment on that check has been stopped, but makes no express written or oral representation with respect thereto, constitutes the crime of obtaining money by "false pretenses" under 13 V.S.A. § 2002. We hold that it does and therefore affirm the judgment of conviction.

The defendant was employed as a CETA worker at a weekly wage of $250.04, which was paid by the Vermont Job Service. A paycheck in that amount was mailed to him on July 9, 1982. On July 12, he complained that the check had not arrived. When it still had not arrived two days later, he was given $110 in emergency funds. At the defendant's request, payment on the missing check was stopped. On July 22, he was given a check for $250.04 to replace the earlier "lost" check. On the same date he cashed the $250.04 replacement check at the Vermont National Bank in Bennington and refunded to the Job Service the $110 it had advanced to him in the form of emergency funds.

According to bank records and photographs admitted into evidence, the defendant on August 2, without making any express written or oral representations, cashed the Job Service check on which payment had been stopped. Thereafter the defendant was charged with having "designedly by false pretenses obtained from another person . . . $250.04," a violation of 13 V.S.A. § 2002. At trial the defendant requested, and was denied, an instruction stating that:

> Mere silence or the suppression of the truth or a mere withholding of knowledge upon which another may act is not alone sufficient to constitute False Pretenses. There must be some active, affirmative false representations.

Instead, the court delivered an instruction which read:

> [T]he giving of a check by a person who has no reason to believe it will be honored by its maker may be a false pre-

tense, even though no verbal misrepresentation is made as to the check, the giving of such check being itself a representation that the person has money or credit with the maker to the amount of its face value, and therefore, may be a false representation of the existence of a present fact.

The defendant objected to the instruction.

Upon appeal, the defendant has recast his objection somewhat. He now claims that the State's evidence tended to show only that he had obtained money by "false token," and not by "false pretenses." Defendant's reason for claiming a failure of proof is the absence of any evidence of false pretenses. He insists the evidence merely shows the presentation of a check without any representations whatsoever. Thus, the basis of the defendant's claim of error was fairly presented to the trial court. The State's contention that this claim of error was not preserved for appeal is without merit. *Perkins* v. *Windsor Hospital Corp.*, 142 Vt. 305, 308, 455 A.2d 810, 812 (1982).

The statute dealing with the crimes of false pretenses or false tokens, 13 V.S.A. § 2002, to the extent applicable here, states:

> A person who designedly by false pretenses or by privy or false token and with intent to defraud, obtains from another person money or other property, . . . shall be imprisoned not more than ten years or fined not more than $1,000.00, or both, if the money or property so obtained exceeds $25.00 in value.

The defendant was charged specifically with obtaining money by false pretenses. He now claims that proof of false pretenses requires a showing of an actual false representation in addition to the mere presentation of a check. Such a conclusion, he argues, is compelled by 13 V.S.A. § 2003, which in pertinent part defines "false token" as:

> The use of a matured check, or other order for the payment of money, as a means of obtaining from another person money or other property, . . . is the use of a false token within the meaning of section 2002 of this title, *although representation is not made in respect thereto.* (Emphasis added.)

If the mere presentation of a bad check constituted a false representation, the defendant argues, it would not be necessary for § 2003 to add the phrase "although representation is not made in respect thereto." In fact, he maintains the phrase would be meaningless, since a representation would always have been made in respect to the presentation of a bad check.

The State charged the defendant with committing a crime of false pretenses under 13 V.S.A. § 2002 and not with the crime of passing a bad check under 13 V.S.A. § 2022. The statute creates and defines the offense. See *State v. Quesnel*, 124 Vt. 491, 493, 207 A.2d 155, 156 (1965).

In distinguishing the crimes of false pretenses and bad checks, it should be noted that the crime of false pretenses may be committed either with, or without, a false token. If the offense of false pretenses is alleged by the State to have occurred without the use of a false token, such as a check or some other instrument, then it is incumbent upon the State, as part of its burden of proof, to show the representations the defendant made to obtain money or property from another by fraud. See *State v. Bissonette*, 145 Vt. 381, 387-89, 488 A.2d 1231, 1235-36 (1985) (defendant convicted of crime of false pretenses on basis of fraudulent oral misrepresentation).

One can commit the crime of false pretenses, 13 V.S.A. § 2002, by the making of a direct or express representation, whether oral or written, without passing a false token, or by passing a false token, such as a check, and the false representation may be shown indirectly or by implication or by the conduct of the person presenting the check for payment. See *People v. Brady*, 275 Cal. App. 2d 984, 996, 80 Cal. Rptr. 418, 425 (1969). False pretenses may even be based on silence or concealment. *Ballaine v. District Court*, 107 Utah 247, 253, 153 P.2d 265, 268 (1944) (silence); *Neece v. State*, 210 So. 2d 657, 661 (Miss. 1968) (concealment).

Notwithstanding the significant overlap between the two statutes—false pretenses, 13 V.S.A. §§ 2002, 2003, and bad check, 13 V.S.A. § 2022,—we clearly distinguish between them when analyzing a situation where, similar to the case at hand, payment on a check had been stopped.

A defendant could, for example, pass a check, knowing it would be dishonored, but fully intending to make good on

the underlying obligation. He would have a defense to the false pretenses prosecution, but be guilty of the bad check crime. Alternatively, a check may be good when issued, but a defendant could subsequently decide to defraud the payee, and stop payment. Prosecution would then lie for false pretenses, not the bad check crime.

*State* v. *Foley*, 140 Vt. 643, 647, 443 A.2d 452, 454 (1982).

This is analogous to the instant case. Defendant knew that the State's check issued to him was initially good. He himself requested the State to stop payment on it, and to issue him a new one when he thought it was lost in the mail. The State did stop payment on the "lost" check and issued the defendant a new one which he received.

When defendant subsequently received the "lost" check, on which he knew the State had stopped payment at his request, he endorsed it instead of returning it to the State. Designedly by false pretenses, with intent to defraud, he negotiated the check and obtained $250.04 from the Vermont National Bank, thus committing the crime of false pretenses.

*Affirmed.*