## Alan B. GOLDMAN and ABG Corporation v. TOWN Of PLAINFIELD

[762 A.2d 854]

No. 98-560

October 17, 2000. Plaintiffs Alan Goldman and ABG Corporation appeal from the dismissal of their complaint upon defendant Town of Plainfield's motion for summary judgment. On appeal, plaintiffs claim the trial court erred in (1) concluding as a matter of law that misrepresentations by the Town made in the course of contract negotiations were not material, and (2) in failing to properly apply the rational basis test to their claim of unjust discrimination. We affirm.

This Court reviews a motion for summary judgment using the same standard as the trial court. Summary judgment is appropriate only when the moving party has demonstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. See *O'Donnell v. Bank of Vermont*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997).

Plaintiff Goldman is a developer who purchased some land and unused dormitories known as Northwood Campus from Goddard College in 1987 to convert into private condominiums. ABG Corporation is Goldman's successor in interest. In the process of purchasing the property, Goldman approached the Town of Plainfield to negotiate access to its public water and sewer system. Goddard College, including its Northwood Campus, had been using Plainfield's sewer system since 1968 and its water since 1983, but because the Northwood Campus is located in East Montpelier rather than Plainfield, the Town was acting in a private capacity, and not as a public institution, in dealing with Goldman.

The Town's water comes from six springs and five wells. In the course of negotiations, the Town representatives told Goldman that it lacked the capacity to provide water to the planned Northwood Campus condominium project, which would have 60 condominium units. Therefore, as a condition of the contract to supply water and sewer services, it required plaintiffs to limit the total number of bedrooms, to retain the existing footprint of the buildings, and to develop a new source of water supplying at least 11 gallons of water per minute. When plaintiffs could not perform the last condition, the parties renegotiated their contract, and plaintiffs agreed to pay $10,000 and convey to the Town the former Goddard private water system and the land upon which the system is located.

In 1993, plaintiffs ceased paying their water and sewer bills and sued the Town for damages, alleging it fraudulently or negligently misrepresented the fact that it lacked the capacity to provide water to the Northwood Campus condominium project. The complaint was dismissed because the court found that the alleged misrepresentations went only to the motive for the Town's bargaining position and were not material to the agreement.

In order to recover for fraud,* plaintiffs had to show "'an intentional misrepresentation of existing fact, affecting the essence of the transaction.'" *Silva v. Stevens*, 156 Vt. 94, 102, 589 A.2d 852, 867 (1991) (quoting *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980)); see also *Lewis v. Cohen*, 157 Vt. 564, 568, 603 A.2d 352, 354 (1991). The misrepresentation must "be made as to a material fact." *Lewis*, 157 Vt. at 569, 603 A.2d at 354. As described in the early case of *Stone & Wellington v. Robie*, 66 Vt. 245, 247, 29 A. 257, 257 (1894):

---

* Although plaintiffs pled negligent misrepresentation, they have not argued here that the relevant elements of this tort are different from the elements of deceit.

[T]he misrepresentations must relate distinctly and directly to the contract, must affect its very essence and substance, and must be material to the contract. If the representations relate to other matters, or to the contract in a trivial and unimportant respect only, or are wholly collateral, they afford no ground for avoiding the contract.

The Court in *Robie* found no fraud or misrepresentation because the "representations did not relate to the quantity, quality, or value of the articles sold." *Id.*; see also Restatement (Second) of Torts § 538(2) (1977) (a fact is material either if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" or the person making the misrepresentation knows or has reason to know that the other party is likely to regard it so). A statement of the motives underlying a party's bargaining position is generally not deemed to be material. See *In re Davenport's Estate*, 2 N.W.2d 17, 22 (Neb. 1942).

Assuming that representatives of the Town misrepresented why they were requiring plaintiffs to develop an alternative water source, as we must on summary judgment, we conclude that the trial court correctly ruled that the representations were not material. Even if plaintiffs attached important significance to these representations, there is no evidence that the Town knew that plaintiffs did so; in fact, the record indicates Goldman obtained the water capacity and flow-rate information from the Town before entering into the contract. The representations went to the Town's motives in formulating its bargaining position and not to the essence of the contract.

In reaching this conclusion, we emphasize that this case does not concern claims brought under Vermont's Consumer Fraud Act, see 9 V.S.A. §§ 2451-2480g, or the Federal Trade Commission Act, see 15 U.S.C. §§ 41-77. Those statutes have broad remedial purposes that extend beyond common law fraud or misrepresentation. See 9 V.S.A. § 2451 (Consumer Fraud Act was enacted "to protect the public, and to encourage fair and honest competition"); *D.D.D. Corp. v. Federal Trade Comm'n*, 125 F.2d 679, 682 (7th Cir. 1942) ("false, unfair or deceptive acts defined in the Federal Trade Commission Act need not be such as would constitute fraud, as that term is ordinarily understood in law"). Accordingly, misrepresentation or nondisclosure of facts not directly pertaining to the essential terms of a contract but which reasonably could have affected a consumer's decision whether to purchase a product or service may be actionable under those statutes. See, e.g., *Peabody v. P.J.'s Auto Village, Inc.*, 153 Vt. 55, 57-58, 569 A.2d 460, 462 (1989) (trial court erred in dismissing plaintiff's consumer fraud claim based on its conclusion that defendant's failure to inform plaintiff that used car he was buying had been "clipped" was not material because it did not affect reliability, safety, or value of vehicle); *People ex rel. Hartigan v. Knecht Servs.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991) (business's false representation that its services were being offered at "minimum charge" may have been insufficient for false advertising claim, but was sufficiently deceptive to support Consumer Fraud Act violation because consumers could have been expected to rely on representation in determining whether to solicit business's services). As noted, however, this appeal does not concern statutory claims of consumer fraud or deceptive business practices.

Plaintiffs' second ground for appeal involves their claim that water and sewer rates charged to Goddard College are so unreasonably low compared to those charged to other ratepayers that they are unjustly discriminatory. Prior to 1967,

Goddard College maintained its own water and sewer systems, and the Town did not have a municipal sewer system. In 1967, Goddard and the Town entered into a contract whereby they would jointly construct a municipal sewer system. Goddard agreed to pay a proportionate share of the construction and maintenance costs, based upon its share of the population using the system. The construction cost has been completely paid, and Goddard currently pays 22% of the maintenance costs of the system. Residents pay $180.00 per year for sewer use. Goddard connected to the Town water system in 1983. Goddard pays $3,000.00 annually for up to 1,520,000 gallons of water, plus $2.10 for every 1000 gallons over that amount. A single residence on the water system pays $180.00 annually for up to 60,000 gallons, plus the same $2.10 for every 1000 gallons over that amount.

"Claims of 'unjust discrimination' in cases involving the provision or cost of municipal services have been analyzed under the equal protection clause of the federal constitution." *Colchester Fire District No. 2 v. Sharrow*, 145 Vt. 195, 198, 485 A.2d 134, 136 (1984). Equal protection claims must be reviewed under the rational basis test, where different treatment of different persons or groups will be permitted unless such treatment is based upon "wholly arbitrary and capricious grounds." *Id.* at 199, 485 A.2d at 136. Under this standard, different rates may be charged to various classes of customers if the classifications are reasonable, such as based on the quantity used, the time used, the purpose of the use, the duration of the use, and other such factors. See *Cleveland Electric Illum. Co. v. Public Utils. Comm'n Of Ohio*, 330 N.E.2d 1, 18 (Ohio 1975).

Goddard is a unique user of water and sewer services within the Town because of the volume of its use, the nature of its use and the history of its involvement in constructing the sewer plant. As clarified in their reply brief, plaintiffs particularly challenge the minimum water fee of $180 for 60,000 gallons applicable to users in the Town other than Goddard because most water consumers do not reach the mandatory minimum amount, while Goddard always exceeds its minimum allotment. Mandatory minimum allotments are justified by the need for the utility to recover its costs of establishing and maintaining a hookup, apart from the costs of the commodity delivered, and are always subject to the discrimination charge made here. Overall, we conclude that plaintiffs may have arguments that alternative rate structures might be fairer to them and residential users generally, but we cannot conclude that the different treatment of Goddard is so irrational as to deny plaintiffs equal protection of the laws.

*Affirmed.*