## State of Vermont v. Michael Agosta

[787 A.2d 1252]

No. 00-387

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 9, 2001

*William H. Sorrell,* Attorney General, and *John Treadwell,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *William A. Nelson,* Appellate Attorney, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant Michael Agosta appeals his jury conviction of false pretenses, arguing that the conviction cannot stand because the State failed to prove that he misrepresented a fact affecting the essence of the transaction underlying the prosecution. We reject this argument and thus affirm the conviction.

In February 1997, Roy Buchsbaum, an out-of-state gun collector, obtained a copy of a circular distributed by defendant advertising exotic firearms for sale. The circular indicated that the Agosta Firearms Company of Williston, Vermont, was clearing out the last of its inventory and "going out of business." Buchsbaum called defendant at his home in Vermont and began negotiating a price for three items — two fully automatic rifles and a grenade launcher. As a follow-up to their conversation, defendant sent Buchsbaum correspondence bearing the logo of the Agosta Firearms Company, Law Enforcement Division, and indicating that defendant was federally licensed as a class 2 firearms manufacturer and a type 10 manufacturer of destructive devices. In truth, defendant possessed neither license; his class 2 license had expired, and he had withdrawn his previous application for a destructive devices license.

In correspondence, defendant demanded that Buchsbaum send him half of the $8900 sale price before he would send in the paperwork to get title to the three weapons transferred. In response, Buchsbaum sent defendant a check for $4450 in early March 1997. Approximately four weeks later, after unsuccessfully attempting to contact one of his local dealers to find out if the transfers for the rifles had been approved, Buchsbaum telephoned defendant to have

him send the rifles to a different dealer. Defendant indicated he could do that, but demanded more money. In early April 1997, Buchsbaum sent defendant another check for $2700.

When two more months passed without the transfers going through, Buchsbaum became concerned and attempted to call defendant, only to discover that defendant's telephone had been disconnected. Eventually, after finding a listing through the Internet, Buchsbaum was able to locate defendant at a different address and telephone number. Over the next six weeks, Buchsbaum was unable to reach defendant by telephone or certified mail at the new address, even though one of defendant's relatives had told Buchsbaum that defendant was staying at that location. Finally, in mid-September 1997, Buchsbaum complained to police that he had been swindled by defendant. Police investigated and spoke to defendant on at least two occasions.

In March 1998, defendant was arraigned on a charge of false pretenses, in violation of 13 V.S.A. § 2002. After the district court denied defendant's motions to suppress certain evidence and dismiss the charge, the case went to trial. Defendant was convicted by a jury and given a suspended two-to-five-year sentence. On appeal, he argues that, in a prosecution for the crime of false pretenses, the State must prove that the alleged misrepresentation went to the essence of the transaction. According to defendant, the State failed to make such a showing, the evidence was insufficient to establish that element of the crime, and the court committed plain error by failing to charge the jury on that point.

Vermont's false pretenses statute, which can be traced back to the eighteenth century in one form or another, imposes criminal penalties upon anyone who "designedly by false pretenses" and "with intent to defraud" obtains from another person money or property exceeding twenty-five dollars in value. 13 V.S.A. § 2002. The basic three elements of § 2002 are that the defendant must have (1) acted with intent to defraud, (2) used a fraudulent devise or artifice, and (3) obtained money or property valued in excess of twenty-five dollars. *State v. Foley*, 140 Vt. 643, 646, 443 A.2d 452, 453 (1982). While acknowledging slight variations in the laws of different jurisdictions, a leading treatise has defined the statutory crime of false pretenses as "(1) a false representation of a material present or past fact (2) which causes the victim (3) to pass title to (4) his property to the wrongdoer, (5) who (a) knows his representation to be false and (b)

intends thereby to defraud the victim." 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.7, at 382-83 (1986). This Court has held that, to obtain a conviction for false pretenses, the State must prove that the victim relied materially, but not necessarily solely, upon the false representation. *State v. Bissonette*, 145 Vt. 381, 388, 488 A.2d 1231, 1235 (1985).

Defendant's principal argument on appeal is as follows: This Court should look to the common law to interpret § 2002's undefined terms, such as "false pretenses" and "intent to defraud." See *Neder v. United States*, 527 U.S. 1, 23 (1999) (under principle that Congress intends to incorporate well-settled meaning of common-law terms it uses, court must presume that Congress intended to incorporate materiality of misrepresentation as element of federal mail fraud statute). See generally *State v. Dixon*, 169 Vt. 15, 18, 725 A.2d 920, 922 (1999) (we assume statutory terminology is consistent with common law). Vermont common law governing the civil tort of fraud requires plaintiffs to demonstrate that the alleged fraudulent misrepresentation affected the essence of the transaction. See *Goldman v. Town of Plainfield*, 171 Vt. 575, 575, 762 A.2d 854, 856 (2000); *Silva v. Stevens*, 156 Vt. 94, 102, 589 A.2d 852, 857 (1991); *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980). According to defendant, the alleged misrepresentation concerning his status as a firearms dealer did not go to the essence of the transaction with Buchsbaum because he (defendant) could have completed the transaction through an intermediary dealer, notwithstanding his lack of a federal firearms license; therefore, the misrepresentation was immaterial and could not have served as the basis for his conviction on the false pretenses charge.

■ We find this argument unavailing. Defendant has not cited, nor have we found, any authority suggesting that the statutory crime of false pretenses includes an element requiring the alleged misrepresentation to go to "the essence of the transaction." The only materiality requirement that has been imposed by this Court with respect to § 2002 is the one, noted above, that the victim must have materially relied upon the misrepresentation. *Bissonette*, 145 Vt. at 388, 488 A.2d at 1235; cf. *Neder*, 527 U.S. at 22 n.5 (citing treatise and Restatement (Second) of Torts § 538 (1977) for proposition that a misrepresentation is material if it reasonably induces victim to act or if maker of misrepresentation has reason to know that it will induce victim to act); Black's Law Dictionary 1016 (7th ed. 1999) (material

misrepresentation is one in which reasonable person would attach importance in deciding how to act with regard to transaction at issue or to which maker has reason to know that recipient would attach some importance); LaFave, *supra*, at 386 n.15, 391-92 (noting that misrepresentation must concern material fact to suffice for false pretenses, and citing *People v. Noblett*, 155 N.E. 670, 670-71 (N.Y. 1927), in which court concluded that lessee's false statement to sublessee as to duration of lease was not material misrepresentation because it had no effect on parties' transaction).

In *Bissonette*, 145 Vt. at 384, 387-88, 488 A.2d at 1233, 1235, we upheld a conviction of false pretenses that was based on the defendant falsely telling his elderly victim that the person who supervised her affairs had approved her paying him to fix her roof. While this misrepresentation was material in the sense that it induced the victim to part with her money, and thus was sufficient to support the conviction, see *id.* at 388, 488 A.2d at 1235, it did not necessarily go to the essence of the transaction. Cf. *State v. Jones*, 389 P.2d 398, 402 (N.M. 1964) (defendant's false statement that he was vice-president of company was material misrepresentation sufficient to convict defendant of false pretenses for scheming to sell worthless stock). If we were to accept the argument raised by defendant here on appeal, defendants in cases such as *Bissonette* might not be convicted of false pretenses. There is no indication that the Legislature intended to limit the reach of the statute in this manner.

■ Viewed from this perspective, defendant's letterhead concerning his licensing status falsely represented a material fact and thus qualified for the crime of false pretenses, given Buchsbaum's testimony that (1) he assumed he was purchasing the weapons from a federally licensed dealer; (2) he relied upon defendant's written representation as to that fact; and (3) he would not have given defendant his money and gone through with the transaction had he known that defendant did not in fact have the licenses he claimed he did.

■ In defendant's view, the alleged misrepresentation in this case would not have subjected him to liability for civil fraud under our case law. That may be so, although the misrepresentations found to be immaterial in the civil cases cited by defendant are substantively different from the present one. See *Goldman*, 171 Vt. at 576, 762

A.2d at 856 (statements concerning Town's motives for formulating its bargaining position as to contract with plaintiff did not go to essence of transaction and thus did not support plaintiff's fraud action); *Stone & Wellington v. Robie*, 66 Vt. 245, 246-47, 29 A. 257, 257 (1894) (statements comparing value and quality of defendant's livestock to that of others were not material misrepresentations supporting claim of fraud). In any event, whether defendant could be found guilty of the statutory crime of false pretenses does not depend on whether he could have been found liable in superior court based on a civil fraud complaint. See *State v. Allen*, 146 Vt. 569, 572, 507 A.2d 975, 977 (1986) (false pretenses "statute creates and defines the offense"); *State v. Messier*, 145 Vt. 622, 627-28, 497 A.2d 740, 743 (1985) (task of defining crimes belongs to Legislature, and definition of circumstances under which exculpatory or mitigating matters will be recognized is likewise addressable by Legislature).

■ We also note that there is an additional element of false pretenses — intent to defraud — that covers defendant's concerns. Traditionally, a false representation had to relate to a present or past fact to qualify for the crime of false pretenses, but the modern, prevailing view is that statements of intention falsely representing a present state of mind — including false promises of future action — will suffice. LaFave, *supra*, at 386-88; see *State v. Vigil*, 922 P.2d 15, 24 (Utah Ct. App. 1996) (holding that statement of future conduct is regarded as present intent to perform, and hence, if made by one not intending to perform, is actionable as false pretense); *Jones*, 389 P.2d at 401 (noting more recent view expressed by Justice Traynor that promise made without intention to perform is misrepresentation as to state of mind and thus false pretense). This Court has applied the same principle to the law of civil fraud. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133, 636 A.2d 744, 747 (1993) (misrepresentations about future actions can be fraudulent if, at time statement was made, defendant intended to act differently from promise); *Union Bank*, 138 Vt. at 121, 411 A.2d at 1342 (action for fraud and deceit will lie for false promises shown to be essential to scheme to defraud; intentional misrepresentation as to future action constitutes misrepresentation of existing fact insofar as it misrepresents actor's present intention).

■ Although the prosecution relied on defendant's misrepresentation of his licensing status as the fraudulent artifice used to

lure Buchsbaum into the firearms transaction, the trial court instructed the jurors that, to convict defendant of false pretenses, they would have to determine beyond a reasonable doubt that, during the winter and spring of 1997, he designedly acted with *intent to defraud* in obtaining the money from Buchsbaum. See LaFave, *supra*, at 401 (to be guilty of false pretenses, it is not enough that defendant knows or believes representation to be false; there must also be intent to defraud). The "intent to defraud" element requires a scheme to cheat the victim. See *Smith v. Southeastern Fin. Corp.*, 337 So. 2d 330, 333 (Ala. 1976) ("'Intent to defraud' requires a scheme to unfairly deprive someone of something of value."); see also *State v. Weigel*, 477 A.2d 372, 378 (N.J. Super. Ct. App. Div. 1984) ("In common parlance, the word 'defraud' means to cheat or wrongfully deprive another of his property by deception or artifice."); Black's Law Dictionary, *supra*, at 434 ("defraud" means: "To cause injury or loss to (a person) by deceit.").

Defense counsel told the jurors in opening and closing arguments that this was simply a case of a deal gone sour, that there were legitimate reasons for the delays in sending the weapons, and that even if defendant decided at some point not to send the weapons, it was only in anger *after* Buchsbaum had gone to police. Defense counsel reminded the jurors that, to convict defendant of false pretenses, they would have to determine beyond a reasonable doubt, based on the evidence presented at trial, that he had no intention during the winter and spring of 1997 to deliver the weapons.

For its part, the State argued that there was substantial circumstantial evidence for the jurors to conclude that defendant had intended to swindle Buchsbaum. Indeed, the State presented evidence of defendant's failure both to follow through on the paperwork necessary for transfer of the weapons and to notify Buchsbaum of his change of address. The jury was entitled to rely on this evidence in concluding that defendant intended to defraud Buchsbaum and in convicting him of false pretenses. See *United States v. Ismoila*, 100 F.3d 380, 387 (5th Cir. 1996) (standard of review concerning sufficiency of evidence, regardless of whether evidence is direct or circumstantial, is whether rational jury could have found that prosecution proved essential elements of crime beyond reasonable doubt; proof of intent to defraud can arise by inference from facts and circumstances surrounding transaction); *State v. Tidlund*, 4 S.W.3d 159, 160, 164 (Mo. Ct. App. 1999) (jury

may believe all, some, or none of witnesses' testimony and must resolve conflicts in testimony; subjective intent of accused at time of making promise is rarely open to direct proof and ordinarily must be shown through circumstantial evidence); *People v. Sala*, 695 N.Y.S.2d 169, 174 (App. Div. 1999) (fraudulent intent is usually not susceptible of proof by direct evidence and ordinarily must be inferred from circumstantial evidence).

We need not examine this evidence in any detail, however, because defendant has not argued that the evidence was insufficient for the jury to conclude that he had intended from the outset to defraud Buchsbaum. Nor has defendant argued that the State's presentation of its theory of the case relieved the jury of its duty to find each and every element of the crime of false pretenses, including an intent to defraud. See *State v. Brewer*, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996) (jury verdict of guilty accredits testimony of State's witnesses, resolves all conflicts in favor of prosecution, and raises presumption of guilt on appeal, where prosecution is entitled to strongest legitimate view of evidence). Finally, we need not consider defendant's arguments concerning the sufficiency of the evidence and the correctness of the charge because they depend upon him prevailing on his primary argument, which we have rejected.

*Affirmed.*