¶ 58. I am authorized to state that Chief Justice Reiber joins this dissent.

2013 VT 108

## State of Vermont v. Ryan Gillard, Robert Holland, Suzanna Jones, Ann Morse, David Rodgers and Eric Wallace Senft

[88 A.3d 389]

No. 12-433

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Howard, Supr. J., Specially Assigned

Opinion Filed November 22, 2013

*Sarah A. Baker*, Orleans County Deputy State's Attorney, Newport, for Plaintiff-Appellee.

*Kristina I. Michelsen* of *Kristina I. Michelsen, PLLC*, Hardwick, for Defendants-Appellants.

¶ 1. **Reiber, C.J.** Defendants appeal their convictions for unlawful trespass under 13 V.S.A. § 3705(a). They argue that the trial court erred first in not requiring the State to prove the ownership of the land on which they were arrested, second in not granting their request to include specific language about ownership and lawful possession in the jury charge, and third in not vacating their convictions in the interests of justice. We affirm.

¶ 2. Green Mountain Power Corporation (GMP) is an electric utility that operates several wind-power sites throughout Vermont. It obtained long-term leases of land on Lowell Mountain to construct and operate a twenty-one-turbine wind-power site along a ridge of the mountain. Construction required cutting trees, excavating, and blasting rock to produce a "crane road," a leveled strip on which the turbines can be erected by crane. GMP began this work on September 1, 2011, with a tight schedule — its eligibility for $48 million in federal Production Tax Credits depended on the project becoming operational by December 31, 2012.

¶ 3. GMP's blasting subcontractor took several precautions to reduce the risks of injury from flying rock caused by the blasting, including establishing 1000-foot safety zones around each blasting site. No one was allowed within these zones for a specified period of time before and after each blast. Because a portion of the

crane road would be within 100 feet of the leased property's boundary line, some of the blast safety zones actually extended into neighboring land owned by Donald and Shirley Nelson, who strongly oppose the GMP project. Despite the proximity to an adjacent parcel, the entire area in and around the zones was remote, uninhabited forest, far from any structures.

¶ 4. On or around September 28, 2011, the Nelsons allowed a group to protest the wind-power site by setting up camp on the portion of the Nelsons' land that fell within a blast safety zone. This prompted GMP and its blasting subcontractor to increase their safety measures, risking a delay of construction of more than five weeks and threatening GMP's eligibility for the federal tax credits.

¶ 5. On October 13, 2011, GMP responded by initiating a civil suit against the Nelsons for nuisance and interference with contract. GMP asked the court to issue a preliminary injunction ordering the Nelsons and their guests to stay outside the safety zones during blasting times. The order would be enforceable by local police. The Nelsons counterclaimed, alleging that they were the true owners of a portion of the property leased by GMP and that GMP was therefore trespassing on their property. The Nelsons offered testimony from a licensed surveyor supporting their argument, but GMP offered its own leases, a recorded 2002 survey that contained an agreed-upon boundary line between the Nelsons and the owner of the neighboring land, and testimony from two licensed surveyors that disputed the analysis of the Nelsons' surveyor.

¶ 6. On November 1, 2011, the court granted GMP's request for a preliminary injunction, concluding that the Nelsons and their guests were acting out of a desire to injure GMP by deliberately exposing themselves to potential blasting hazards, inflicting liability or imposing delays. The court also denied the Nelsons' request for a temporary restraining order, which would have barred GMP from occupying the disputed land. In denying the request, the court observed that there was a genuine issue of fact regarding the location of the boundary line and that the Nelsons had thus made out a prima facie case for civil trespass. Nevertheless, the court concluded that the Nelsons had not established that they would suffer irreparable harm if the court denied the restraining order or that such an order would serve the public interest. In contrast, the court noted that the harm to GMP from an injunction would be great.

¶ 7. On December 5, 2011, defendants passed through the existing property line — which had been posted by GMP — and entered a portion of the crane-road construction site located on land disputed by the Nelsons and GMP. Defendants' presence posed a safety risk because GMP's employees and subcontractors were using machinery and attempting to work. GMP halted construction, and a representative asked defendants to leave. Although aware of the boundary dispute, defendants refused to leave, claiming permission from the Nelsons, who they maintained owned the disputed land. GMP then contacted local police, who arrived at the scene and asked defendants to leave. Defendants again refused and were arrested.

¶ 8. The State charged defendants with unlawful trespass under 13 V.S.A. § 3705, which reads, in part:

> (a) A person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority or the consent of the person in *lawful possession*, he or she enters or remains on any land or in any place as to which notice against trespass is given by:
>
>> (1) Actual communication by the person in lawful possession or his or her agent or by a law enforcement officer acting on behalf of such person or his or her agent; or
>>
>> (2) Signs or placards so designed and situated as to give reasonable notice.

13 V.S.A. § 3705 (2009) (emphasis added).

¶ 9. The trial was marked by the court's emphasis that possession — not ownership — was dispositive to the trespass charge. Although the court denied the State's motion in limine requesting the court exclude witnesses, evidence, and testimony regarding the civil suit entirely, it echoed the State's concern that such evidence could potentially confuse jurors in the criminal trial by improperly focusing their attention on the potential outcome of the civil boundary dispute rather than the status quo. Addressing this concern, the court specifically noted that it understood that such evidence would be narrowly targeted to help determine the exact location of the existing boundary, rather than the location of the boundary claimed by the Nelsons in the civil suit. The evidence

would therefore address the issue of whether defendants were in fact located on land in possession by GMP at the time of their arrest.

¶ 10. The court's concern about the distinction between possession and ownership was further evident in its instructions to the jury:

> Every crime is made up of essential elements. . . . In this case, the essential elements are that on the date and at the place alleged,
>
> (1) Each Defendant;
> (2) Entered and remained on land, specifically the Kingdom Community Wind Project site, operated by Green Mountain Power on Lowell Mountain in Lowell, Vermont;
> (3) He or she did so without either legal authority or the consent of the person in *lawful possession*; and
> (4) Each Defendant had received notice against trespass by actual communication by a law enforcement officer acting on behalf of the person in *lawful possession* or his or her agent. (Emphasis added.)

¶ 11. To clarify the third element, the court instructed, "Here, possession means actual control by physical occupation and exercise of that control. Lawful possession means a rightful possession, authorized by law, and it means the right to exercise control over the property."

¶ 12. In adopting these instructions, the court rejected defendants' requested instructions. Defendants' proposed instructions would have removed the emphasis on the relationship between physical occupation and possession and instead tasked the jury with determining whether the Nelsons had a superior right to possess the disputed land:

> If someone other than Green Mountain Power has a superior right to possess the property and the defendants had the consent of that owner, then the defendants cannot be found guilty of unlawful trespass . . . You must determine whether the defendants had a lawful authority, or, in other words, they had some good faith color of

right to remain on the property after having been asked to leave; and if they claim or have some color of right, some lawful authority or some claim to remain there, then they cannot be held criminally responsible under this statute for their refusal to leave.

¶ 13. The jury was thereby instructed that lawful possession was the dispositive issue with respect to the trespass charge. Shortly after beginning deliberations, the jury asked the court: "In Vermont case law, during a current property dispute, who is in control of property until the dispute is settled? Current owner, or person disputing, or both?" The court did not give any additional instructions in response to the jury's question, reasoning that its initial instruction could not be any clearer.

¶ 14. With this, the jury deliberated and returned its verdict, finding defendants guilty. The court denied defendants' motions for judgment of acquittal and to dismiss. Defendants appeal these denials and their convictions.

I.

¶ 15. Defendants argue that the trial court erred by not requiring the State to prove beyond a reasonable doubt that Moose Mountain Forestry, LLC, owned the land on which defendants were arrested and leased the wind rights to Moose Mountain Wind, LLC, which in turn leased the rights to GMP. Defendants raised this argument through their motion for judgment of acquittal, and we address it de novo because the issues it raises are strictly matters of law. *State v. Neisner*, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597 ("In assessing the trial court's ruling on a question of law, we apply a de novo standard.").

¶ 16. ■ Although their traits may overlap, ownership and possession are distinct legal concepts. Ownership is the set of rights and duties allowing one to use, manage, alter, or convey property. See *In re Interim Bylaw*, 170 Vt. 541, 543, 742 A.2d 742, 744 (1999) (mem.) (use of land for residential purposes is one "strand" within owner's "bundle of rights" (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987))); *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 31, 181 Vt. 309, 917 A.2d 508 (citizens acquire "bundle of rights" when they obtain title to property (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992))); accord Black's Law Dictionary 1215 (9th ed.

2009) (defining ownership as the "bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others"). These rights and duties can be separated by the owner and given to other parties, as when a landlord leases property to a tenant.

¶ 17. ■ Possession, meanwhile, is a more limited right; it is the physical or constructive control of property. See *Lyon v. Parker Young Co.*, 96 Vt. 361, 363-64, 119 A. 881, 881-82 (1923) (holding that possession was established by enclosing land with wire fence, maintaining and tapping trees, and pasturing land); accord Black's Law Dictionary 1281 (defining possession as "[t]he fact of having or holding property in one's power . . . [t]he right under which one may exercise control over something"). The right to possess property — or "lawful possession" — may flow from one's ownership of property but it also may flow from other sources, such as a lease, a court order, or even the circumstances surrounding the property's use. See, e.g., *Darling v. Ennis*, 138 Vt. 311, 314, 415 A.2d 228, 231 (1980) (affirming that ejection action could not be maintained because plaintiff had been disseized of property through adverse possession).

¶ 18. ■ The unlawful trespass statute protects parties from intrusions on their lawful possession of land. 13 V.S.A. § 3705; *People v. Johnson*, 906 P.2d 122, 125 (Colo. 1995) ("[T]respass is an invasion of one's interest in habitation or possession of a building, rather than an invasion of one's ownership interest in a building."). Because it is not mentioned in the statute, proof of ownership is not an element required for an unlawful trespass conviction, so long as lawful possession is established. See *State v. Allen*, 146 Vt. 569, 572, 507 A.2d 975, 977 (1986) ("The statute creates and defines the offense."); *State v. Shady*, 100 Vt. 404, 405, 138 A. 777, 777 (1927) ("In the matter of creating and defining criminal offenses, the Legislature has a very broad discretion, with the exercise of which the courts can interfere only when constitutional limitations plainly have been transgressed."). Other jurisdictions have held that even an owner may be prosecuted under the statute if he is not in lawful possession. See *Johnson*, 906 P.2d at 125 (holding that defendant's arguable ownership interest does not bar his prosecution for trespass because he had no possessory interest in property); *Langston v. State*, 855 S.W.2d 718, 721 (Tex. Crim. App. 1993) (holding that ownership is not

element of criminal trespass and therefore does not have to be proved unless pleaded by state). Therefore, the State's burden was to prove GMP's lawful possession of the land on which defendants were arrested. As we note below, the State carried this burden by presenting evidence of the surrounding circumstances.

## II.

¶ 19. ■ Defendants also argue that the trial court's refusal to grant their request to charge amounted to a violation of their constitutional right to defend themselves. We address this argument by determining whether the court properly exercised its discretion to instruct the jury on the law. We assign error only if the instructions, as a whole, did not "breathe[ ] the true spirit of the law" and thereby undermine our confidence in the verdict. *State v. Myers*, 2011 VT 43, ¶ 22, 190 Vt. 29, 26 A.3d 9 (quotation omitted); see *State v. Carpenter*, 170 Vt. 371, 374-75, 749 A.2d 1137, 1139 (2000).

¶ 20. ■ ■ Defendants' requested instructions would have been error. As we have observed, the requested instructions would have replaced the statute's emphasis on lawful possession with an emphasis on ownership. 13 V.S.A. § 3705(a). Moreover, when a party disputes a boundary and therefore contests ownership of the portion of land encompassed by the disputed property line, that party may choose to institute a legal action. But the mere initiation of a suit does nothing to alter the status quo, nor does the law permit parties to press their as-yet-unresolved possessory claims by extra-judicial occupation. See *Anello v. Vinci*, 142 Vt. 583, 586, 458 A.2d 1117, 1119 (1983) (defendant tenant maintained possession of rental unit throughout ejection proceedings, not landlord); *Darling*, 138 Vt. at 313, 415 A.2d at 230 (defendant adverse possessor maintained possession of land throughout court proceedings even though plaintiff claimed ownership).

¶ 21. When considered as a whole, the court's instructions accurately conveyed the law's requirements to the jury. 13 V.S.A. § 3705(a). Specifically, they identified the State's burden of proving lawful possession of the land on which defendants were arrested and also explained the concept of lawful possession. The trial court's explanation, made through its clarification of the third element of unlawful trespass, aligns with the accepted meaning of the term. See *Lyon*, 96 Vt. at 363-64, 119 A. at 881-82.

268

¶ 22. ■ The jury had ample evidence from which it could properly determine the issue of lawful possession and, ultimately, defendants' guilt. As we have said, lawful possession may flow not only from ownership, but also from leases, court orders, or the circumstances of land's use. *Darling*, 138 Vt. at 314, 415 A.2d at 231. Jurors heard testimony from the wind farm's project manager regarding the leases and easements GMP had obtained from Moose Mountain Forestry, the record owner of the property where defendants were arrested. Copies of GMP's recorded leases and easements, which described the location where defendants were arrested as belonging to Moose Mountain and being leased to GMP, were admitted into evidence. The manager testified that the easements gave GMP the exclusive right to restrict access to the parcels. Pursuant to that contractual authority, the manager testified, GMP took steps to exclude people from the parcels, including posting no-trespassing signs and stationing a twenty-four-hour security guard. Indeed, two of the defendants testified that they specifically passed the boundary line into the disputed property. Finally, Donald Nelson himself testified regarding the recorded survey on which the leases, easements and GMP's site plans were based. Nelson indicated that he and his wife had, in fact, agreed to the boundary it displayed and had signed the survey before a notary.

¶ 23. Although jurors heard testimony regarding the existence of a civil dispute in which the Nelsons now contend that the boundary line is inaccurate, jurors had ample evidence from which to determine beyond a reasonable doubt that each element of the criminal trespass statute was met: that GMP was in rightful possession of the land on which defendants were arrested based on the recorded easements and surveys, that the Nelsons did not have the authority to consent to defendants' presence on the land, that defendants had in fact entered the land, and that defendants had been warned that they were trespassing.

¶ 24. ■ The jury's verdict is not undermined by the court's limitation of evidence concerning the civil case between GMP and the Nelsons. Defendants sought to introduce evidence that would allow the jury to resolve the boundary-line dispute that existed between GMP and the Nelsons. Defendants were apparently proceeding under the theory that if they could show in this criminal trial that the existing property lines were inaccurate and that the Nelsons were later entitled to be declared the so-called

true owners of the property where defendants were arrested, then GMP could not have obtained a lawful right to possess that same property from its lessors. That is simply not the case. As we noted above, a civil court's acknowledgement of a prima facie case for trespass based on a disputed boundary is not the law's final determination of land ownership. Consequently, the Nelsons' mere presentation of that prima facie case in the civil suit does not destroy GMP's right to possess. See *Anello*, 142 Vt. at 586, 458 A.2d at 1119; *Darling*, 138 Vt. at 313, 415 A.2d at 230. Unless and until the civil court alters the status quo, GMP remains in lawful possession. Indeed, by denying the Nelsons' request for a temporary restraining order, which would have prevented GMP from occupying the disputed land, the civil court implicitly recognized the status quo pending further judicial action. Therefore, the jury was free to review the evidence and consider the proper legal question: whether defendants had the consent of the person in lawful possession of the land on which they were arrested.

¶ 25. For this same reason, we observe that delaying the criminal trial pending the resolution of the civil boundary dispute would not have led to a different result. The relevant question in defendants' criminal trial was whether GMP was in lawful possession of the property where defendants were arrested at the time of their arrest. The trial court therefore properly exercised its obligation to bar irrelevant evidence, V.R.E. 401 and 402, and its discretion to exclude potentially confusing or unnecessarily time-consuming evidence of limited probative value. See V.R.E. 403.

### III.

¶ 26. Defendants finally argue that the trial court erred in not vacating their convictions in the interests of justice. They label their prosecution an "abuse of process." Defendants appear to argue that the State simply may never prosecute a criminal trespass when there is a pending civil dispute over the land's ownership, even if the State is not taking a side in the civil suit through its prosecution.

¶ 27. ▮ The court has the discretion to dismiss an indictment if dismissal will serve the interests of justice. See V.R.Cr.P. 48(b)(2). Because this rule involves fundamental separation-of-powers considerations, the court applies it only in extraordinary

circumstances, exercising its discretion to ensure that it does not improperly interfere with the State's right to prosecute. *State v. Sauve*, 164 Vt. 134, 140, 666 A.2d 1164, 1167 (1995). We attribute error to the trial court only if it abused this discretion. *Id.* at 143, 666 A.2d at 1169.

¶ 28. ██ Defendants cite cases that stand for the principle that the State should not prosecute a criminal case for the sole purpose of resolving a civil dispute in favor of a particular party. See *United States v. Miller*, 659 F.2d 1029, 1030 (10th Cir. 1981) (holding, in trespass case involving dispute over ownership of land in possession of Indian tribe, that criminal process should not be used for purpose of making final determination of whether defendant could enter land). However, several facts persuade us both that the State is not attempting to resolve the ownership dispute in favor of GMP and that defendants' prosecution serves the interests of justice. Moreover, these facts show why it is important not to adopt a per se rule barring the State from prosecuting a criminal trespass when there is a pending civil dispute over the land's ownership.

¶ 29. ██ First, defendants' illegal actions were not without an immediate victim. Defendants exposed GMP to substantial harm by purposefully interfering with its construction schedule and threatening its eligibility for federal tax credits. Second, our prohibition on self-help to further a land claim precludes the Nelsons or their guests from entering the disputed land. See *Dustin v. Cowdry*, 23 Vt. 631, 633 (1851) (holding that party claiming right of possession must exercise it through lawful remedy, such as action for trespass, not by unilaterally evicting another by force). Third, defendants' convictions do not lead to an unfair result because a civil court's later determination that the Nelsons own the disputed land would do nothing to change the fact that GMP was in lawful possession before such a ruling. We therefore do not find that the trial court abused its discretion by not dismissing the case in the interests of justice.

*Affirmed.*

¶ 30. **Dooley, J.,** dissenting. There is a disconnect in this case between the trial court's charge to the jury and the defense allowed by the court and presented by defendants. The parties at trial submitted conflicting evidence on whether defendants were

arrested on land owned by the Nelsons — neighboring landowners who allegedly permitted defendants to be there — or by those who leased the property to Green Mountain Power (GMP) along with easements allowing the company to exclude others. Nevertheless, despite defendants' specific request to do so, the trial court refused to address the question of ownership as part of the jury's consideration of whether GMP had "lawful possession" — an essential element of the criminal trespass charge — of the land upon which they were arrested. See 13 V.S.A. § 3705 (criminalizing entering or remaining on land after notice of trespass absent legal authority or consent of person "in lawful possession"). The court's failure to address ownership in its jury instructions undoubtedly confused the jury after it had just heard evidence focusing almost exclusively on who owned the land in question and whether defendants had permission to be on that land. The questions posed by the jury during its deliberations highlighted its confusion, but the court nonetheless refused to clarify or elaborate on its initial truncated instruction regarding the element of lawful possession.

¶ 31. While the trial court was aware that GMP's claim of lawful possession derived from leases entitling the company to easements over land that was the subject of a civil boundary dispute, the court's apparent concern about not resolving that dispute in the context of a criminal trial led it to ignore the necessity of instructing the jury on the ownership component of lawful possession in this case. In essence, the court left the jury on its own to figure out how to deal with the evidence presented on ownership of the disputed land. In my view, absent any explanation of the relevance or significance of the conflicting evidence on who owned the land upon which defendants were arrested for criminal trespass, the charge was inadequate for the jury to consider the principal defense in the case and to determine whether the State had met its burden of satisfying the element of lawful possession under the circumstances here. As the result of the court's instruction allowing the jury to find lawful possession based on nothing more than control of the land, defendants were convicted of criminal trespass, subjecting them to fines and potential incarceration, without regard to whether they had, or reasonably believed that they had, the consent of the true owners of the property upon which they were arrested. Accordingly, I dissent.

¶ 32. From the beginning, this case centered around who actually owned the land upon which defendants were arrested and whether defendants had permission to be on that land from landowners with a good faith claim of ownership. At the time of defendants' arrest, there was a civil case pending in which the Nelsons, from whom defendants· allegedly had consent to enter the property, claimed ownership of that land. As the trial court indicated in denying the State's motion in limine, the State sought to prohibit defendants from presenting testimony of a surveyor and Mr. Nelson "regarding the location of the boundary and to show that the property where they were located was not in the lawful possession of GMP." Although the court shared the State's concern that the criminal proceeding not become a forum to litigate the pending civil action, it acknowledged defendants' "fundamental constitutional right" to defend themselves by presenting relevant and material evidence on each and every element of the alleged criminal offense. Therefore, the court denied the State's motion in limine with the understanding that defendants' evidence "will be narrowly targeted to the question of the location of the boundary which, based on [defendants'] representations regarding the location of the defendants and the location of the disputed boundary lines, is relevant to the question of whether the particular land where [defendants] were located was in the lawful possession of GMP."

¶ 33. In the majority's view, this statement demonstrates that the trial court intended to limit the evidence to allow the jury to determine only "the exact location of the existing boundary, rather than the location of the boundary claimed by the Nelsons in the civil suit." *Ante*, ¶ 9. That is not what the court said, however. And, in fact, the court ultimately allowed the parties to present evidence contesting who owned the land upon which defendants were arrested, not just whether that land was part of the land leased to GMP as depicted in the easement agreements and the deeds and maps referenced therein.

¶ 34. In her opening argument, defense counsel told the jury that the State would be unable to prove that GMP had lawful authority to exclude defendants from the land upon which they were arrested. She explained that: (1) a surveyor would testify that the land in question belonged to the Nelsons and was not part of the land leased to GMP; and (2) Mr. Nelson would testify that he gave defendants permission to enter his land and even advised them as to the location of the boundary line.

¶ 35. The State called four witnesses. The first, the arresting law enforcement officer, acknowledged on cross-examination that defendants told him they believed they were on the Nelsons' property. The second, a GMP official, testified that defendants were arrested on land that was part of the land over which GMP had obtained easements allowing it to exclude others. The third, Mr. Nelson, acknowledged the existence of a recorded survey relied upon by GMP and a prior boundary agreement regarding the land leased to GMP, but insisted on cross-examination that the agreement did not include the land upon which defendants were arrested. The fourth, a surveyor, was permitted to testify only as a fact witness to lay a foundation for admission of the recorded survey.

¶ 36. At the conclusion of the State's case, defendants asked the court to enter a judgment of acquittal, contending that the State had failed to prove that GMP had obtained lawful possession through rightful ownership of the land upon which defendants were arrested. Defendants argued that, in this case, lawful possession — an element of the charged crime — was derived from, and dependent upon, lawful ownership of the landowners from whom GMP had obtained its easements. The court denied the motion, stating that "the testimony is not entirely clear on that issue" and the law had "to do not only with ownership, but . . . with lawful possession of the property itself."

¶ 37. Defendants then presented the expert testimony of a surveyor, who opined that the boundary agreement between the Nelsons and a neighboring landowner did not cover the land upon which defendants were arrested and that the recorded survey relied upon by the State did not correctly represent the boundary of the Nelsons' property. Finally, two of the individual defendants testified that they were arrested on land they believed was owned by the Nelsons and that Mr. Nelson had allowed them to enter that land.

¶ 38. Following a charge conference, defendants proposed a jury instruction stating, in relevant part, that: (1) lawful possession means the right to exercise control over property; (2) defendants could not be found guilty of criminal trespass if someone other than GMP had a superior right to possess the land in question and gave defendants consent, or defendants reasonably believed they had consent, to be on that land; and (3) it was for the jury to determine whether defendants had lawful authority to remain

on the disputed land through the consent of the person with a superior right to the land.

¶ 39. The court rejected defendants' proposed charge and instead instructed the jury as follows regarding the "lawful possession" element of the criminal trespass statute:

> The third essential element is that each defendant acted without either legal authority or the consent of the person in lawful possession. Here, possession means actual control by physical occupation and exercise of that control. Lawful possession means a rightful possession authorized by law, and it means the right to exercise control over the property.

When the court asked counsel to state for the record any objections to the charge, defendants explicitly objected to "the lack of an instruction on the lawful possession, including the right to superior ownership of the property" and "to the lack of an intent element in the charge."

¶ 40. The State briefly argued in its closing statement to the jury that GMP had an easement giving it lawful possession of, and the right to exclude persons from, the land in question. Defense counsel responded in closing that the State could not prove lawful possession because it had failed to make a "link between whoever granted that easement to Green Mountain Power and their ownership of the property." Defense counsel further argued that defendants had submitted sufficient evidence through their expert witness to create a reasonable doubt as to whether they were on land lawfully leased to GMP, given the true boundary line between the Nelsons' property and the leased land on which GMP claimed an easement and a right to exclude others.

¶ 41. During deliberations, the jurors submitted two questions for the court. The first was whether, under Vermont law, the current owner or the party disputing ownership had control of disputed property pending resolution of the dispute. The second was whether there was a current legal dispute regarding the land in question. In response, the court told the jury that it would have to make the best of the legal instructions given and that no new evidence could be presented.

¶ 42. The jurors' questions highlighted the apparent lack of a connection between the case presented to the jury and the instruction it received on lawful possession. As shown above, the

conflicting evidence at trial centered on whether the boundary line set forth in the easement agreement and the documents referenced therein was the true boundary line. Defendants presented evidence indicating that that boundary line was inaccurate and that defendants were actually on the Nelsons' property with the Nelsons' consent when they were arrested. The court instructed the jury only that lawful possession means "rightful possession authorized by law" and "the right to exercise control over the property," without any further explanation. The court's charge simply equated "lawful possession" with the right to control the land, without any explanation of the significance of the parties' evidence disputing ownership of the land upon which defendants were arrested or of what was required to show a right to control the land.

¶ 43. Nor did the charge adequately instruct the jury on the issue of intent. After the court instructed the jury on each of the elements of the crime, it stated that: "In the above elements, I have used the words intent or intention." In fact, the court never mentioned either word in instructing the jury on the elements of the crime. The court then proceeded to state that "[a]cting with intent means to do an act on purpose." The court's instruction did not give the jury any guidance on whether defendants could be convicted even if they intended to remain only on property that they reasonably believed was owned by the Nelsons, who gave them permission to be there. See *Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 978 (N.D. Ind. 2010) (stating that reasonable belief that one has right to be on property of another defeats mens rea requirement of criminal trespass statute); *Myers v. State*, 130 N.E. 116, 117 (Ind. 1921) (stating that criminal intent is essential element of criminal trespass and thus no conviction will lie for that offense if accused entered land under bona fide and reasonable belief that he or she had permission from rightful owner to do so).

¶ 44. In my view, the charge was inadequate under the circumstances of the case, and thus the convictions must be overturned and the matter remanded for a new trial. The State's claim of lawful possession is based upon GMP obtaining easements from the rightful owners of the land. Therefore, the State was required to prove that GMP obtained the easements from the lawful landowners for defendants to be convicted of criminal trespass. The State in fact attempted to do so through witnesses and

exhibits concerning the easement agreements and the documents referenced therein, but the court's jury instruction failed to link ownership to GMP's claim of lawful possession of the disputed land. Therefore, the jury was permitted to convict defendants based solely upon GMP's possession of the land without any proof that the possession was lawful and notwithstanding defendants' presentation of evidence that they reasonably believed they were on land with the permission of the rightful owners.

¶ 45. Understandably, the trial court was concerned with confusing the jury by turning a criminal trial into a hearing on a civil boundary dispute. But the boundary dispute was at the heart of defendants' defense and took up most of the evidence presented to the jury. The court could have alleviated its concerns about importing the boundary dispute into the criminal trial by granting the State's motion to continue the criminal trial until the civil dispute was resolved. Indeed, nothing would demonstrate a miscarriage of justice more than the criminal conviction for trespass followed by a civil case determination that the land on which defendants stood to protest was owned by the Nelsons and was not lawfully possessed by GMP. A criminal case is an inappropriate way for the State to resolve a boundary dispute. See *People v. Miller*, 101 N.E.2d 874, 877 (Ill. App. Ct. 1951) (noting well-settled law that criminal trespass statute "cannot be invoked to try disputed rights of title").

¶ 46. In effect, in the absence of a continuance, the boundary dispute had to be tried as a civil case within the criminal prosecution. As a result, the court had to provide an instruction requiring the State to prove every element of the charged criminal offense, including lawful possession based on rightful ownership by the landowners from whom GMP obtained the easements giving it the right to exclude defendants from the land in question.

¶ 47. I emphasize again that this is a criminal rather than a civil matter. The purpose of a criminal trespass statute "is to punish those who wilfully or without a bona fide claim of right commit acts of trespass on the land of another." *Woods v. State*, 703 N.E.2d 1115, 1117 (Ind. Ct. App. 1998) (holding that defendant's "belief and bona fide claim of right defeat the mens rea requirement of the criminal trespass statute and render her conviction erroneous."). It is not enough for the State to show merely that defendants entered upon and refused to leave the subject property when requested to do so; rather, "it is also incumbent to prove

that [defendants'] presence on the land constituted a trespass in the sense that [defendants] invaded another's exclusive right of [lawful] possession." *People v. Sweetser*, 140 Cal. Rptr. 82, 86 (Ct. App. 1977).

¶ 48. Under the circumstances of this case, I believe that the trial court was required to apprise the jury that GMP's claim of lawful possession was dependent upon ownership by those from whom GMP obtained its easements giving it the right to exclude others, and that defendants could not be convicted of criminal trespass if defendants had a reasonable belief that the true owners gave them permission to be on the land upon which they were arrested. Absent such an instruction, the jury was left adrift as to how to use the ownership evidence and was free to convict defendants even if they were arrested on land actually owned by landowners who consented to them being there. Accordingly, I respectfully dissent from the majority's opinion upholding the trial court's jury instructions and defendants' convictions.