2013 VT 108



State v. Gillard, Holland, Jones
et al. (2012-433)

 

2013 VT 108

 

[Filed 22-Nov-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 108
 
  


 No. 2012-433
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Orleans Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Ryan Gillard, Robert Holland,
 Suzanna Jones, 
 Ann Morse, David Rodgers and Eric Wallace Senft
 
 
 March Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Martin
 A. Maley, J.
 
 
  
 
 Sarah A. Baker, Orleans County Deputy State’s Attorney,
Newport, for Plaintiff-Appellee.

 

Kristina I. Michelsen
of Kristina I. Michelsen, PLLC, Hardwick, for
Defendants-Appellants.

 

 

PRESENT:   Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and
Howard, Supr. J.,

                    
Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   Defendants appeal their convictions for
unlawful trespass under 13 V.S.A § 3705(a).  They argue that the
trial court erred first in not requiring the State to prove the ownership of
the land on which they were arrested, second in not granting their request to
include specific language about ownership and lawful possession in the jury
charge, and third in not vacating their convictions in the interests of
justice.  We affirm.

¶ 2.            
Green Mountain Power Corporation (GMP) is an electric utility that operates
several wind-power sites throughout Vermont.  It obtained long-term leases
of land on Lowell Mountain to construct and operate a twenty-one-turbine
wind-power site along a ridge of the mountain.  Construction required
cutting trees, excavating, and blasting rock to produce a “crane road,” a
leveled strip on which the turbines can be erected by crane.  GMP began
this work on September 1, 2011, with a tight schedule—its eligibility for $48
million in federal Production Tax Credits depended on the project becoming
operational by December 31, 2012.  

¶ 3.            
GMP’s blasting subcontractor took several precautions to reduce the
risks of injury from flying rock caused by the blasting, including establishing
1000-foot safety zones around each blasting site.  No one was allowed
within these zones for a specified period of time before and after each
blast.  Because a portion of the crane road would be within 100 feet of
the leased property’s boundary line, some of the blast safety zones actually
extended into neighboring land owned by Donald and Shirley Nelson, who strongly
oppose the GMP project.  Despite the proximity to an adjacent parcel, the
entire area in and around the zones was remote, uninhabited forest, far from
any structures.  

¶ 4.            
On or around September 28, 2011, the Nelsons allowed a group to protest
the wind-power site by setting up camp on the portion of the Nelsons’ land that
fell within a blast safety zone.  This prompted GMP and its blasting
subcontractor to increase their safety measures, risking a delay of
construction of more than five weeks and threatening GMP’s eligibility for the
federal tax credits.  

¶ 5.            
On October 13, 2011, GMP responded by initiating a civil suit against
the Nelsons for nuisance and interference with contract.  GMP asked the
court to issue a preliminary injunction ordering the Nelsons and their guests
to stay outside the safety zones during blasting times.  The order would
be enforceable by local police.  The Nelsons counterclaimed, alleging that
they were the true owners of a portion of the property leased by GMP and that
GMP was therefore trespassing on their property.  The Nelsons offered
testimony from a licensed surveyor supporting their argument, but GMP offered
its own leases, a recorded 2002 survey that contained an agreed-upon boundary
line between the Nelsons and the owner of the neighboring land, and testimony
from two licensed surveyors that disputed the analysis of the Nelsons’
surveyor.  

¶ 6.            
On November 1, 2011, the court granted GMP’s request for a preliminary
injunction, concluding that the Nelsons and their guests were acting out of a
desire to injure GMP by deliberately exposing themselves to potential blasting
hazards, inflicting liability or imposing delays.  The court also denied
the Nelsons’ request for a temporary restraining order, which would have barred
GMP from occupying the disputed land.  In denying the request, the court
observed that there was a genuine issue of fact regarding the location of the boundary
line and that the Nelsons had thus made out a prima facie case for civil
trespass.  Nevertheless, the court concluded that the Nelsons had not
established that they would suffer irreparable harm if the court denied the
restraining order or that such an order would serve the public interest. 
In contrast, the court noted that the harm to GMP from an injunction would be
great.  

¶ 7.            
On December 5, 2011, defendants passed through the existing property
line—which had been posted by GMP—and entered a portion of the crane-road
construction site located on land disputed by the Nelsons and GMP. 
Defendants’ presence posed a safety risk because GMP’s employees and
subcontractors were using machinery and attempting to work.  GMP halted
construction, and a representative asked defendants to leave.  Although
aware of the boundary dispute, defendants refused to leave, claiming permission
from the Nelsons, who they maintained owned the disputed land.  GMP then
contacted local police, who arrived at the scene and asked defendants to
leave.  Defendants again refused and were arrested.

¶ 8.            
The State charged defendants with unlawful trespass under 13 V.S.A
§ 3705, which reads, in part: 

(a)    A person
shall be imprisoned for not more than three months or fined not more than
$500.00, or both, if, without legal authority or the consent of the person in lawful
possession, he or she enters or remains on any land or in any place as to
which notice against trespass is given by:

(1)   Actual communication
by the person in lawful possession or his or her agent or by a law enforcement
officer acting on behalf of such person or his or her agent; or

(2)   Signs or placards
so designed and situated as to give reasonable notice.  

 

13 V.S.A § 3705 (2009) (emphasis added).

 

¶ 9.            
The trial was marked by the court’s emphasis that possession—not
ownership—was dispositive to the trespass charge.  Although the court
denied the State’s motion in limine requesting the court exclude witnesses,
evidence, and testimony regarding the civil suit entirely, it echoed the
State’s concern that such evidence could potentially confuse jurors in the
criminal trial by improperly focusing their attention on the potential outcome
of the civil boundary dispute rather than the status quo.  Addressing this
concern, the court specifically noted that it understood that such evidence
would be narrowly targeted to help determine the exact location of the existing
boundary, rather than the location of the boundary claimed by the Nelsons in
the civil suit.  The evidence would therefore address the issue of whether
defendants were in fact located on land in possession by GMP at the time of
their arrest.  

¶ 10.         The
court’s concern about the distinction between possession and ownership was
further evident in its instructions to the jury: 

Every
crime is made up of essential elements. . . . In this case, the
essential elements are that on the date and at the place alleged,

 

(1)   Each Defendant;

(2)   Entered and
remained on land, specifically the Kingdom Community Wind Project site,
operated by Green Mountain Power on Lowell Mountain in Lowell, Vermont;

(3)   He or she did so
without either legal authority or the consent of the person in lawful
possession; and

(4)   Each Defendant had
received notice against trespass by actual communication by a law enforcement
officer acting on behalf of the person in lawful possession or his or
her agent.  (Emphasis added).  

 

¶ 11.         To
clarify the third element, the court instructed, “Here, possession means actual
control by physical occupation and exercise of that control.  Lawful
possession means a rightful possession, authorized by law, and it means the
right to exercise control over the property.”  

¶ 12.         In
adopting these instructions, the court rejected defendants’ requested
instructions.  Defendants’ proposed instructions would have removed the
emphasis on the relationship between physical occupation and possession and
instead tasked the jury with determining whether the Nelsons had a superior
right to possess the disputed land:

If
someone other than Green Mountain Power has a superior right to possess the
property and the defendants had the consent of that owner, then the defendants
cannot be found guilty of unlawful trespass . . . You must
determine whether the defendants had a lawful authority, or, in other words,
they had some good faith color of right to remain on the property after having
been asked to leave; and if they claim or have some color of right, some lawful
authority or some claim to remain there, then they cannot be held criminally
responsible under this statute for their refusal to leave.  

 

¶ 13.         The
jury was thereby instructed that lawful possession was the dispositive issue
with respect to the trespass charge.  Shortly after beginning
deliberations, the jury asked the court: “In Vermont case law, during a current
property dispute, who is in control of property until the dispute is
settled?  Current owner, or person disputing, or both?” 
The court did not give any additional instructions in response to the jury’s
question, reasoning that its initial instruction could not be any
clearer.  

¶ 14.         With
this, the jury deliberated and returned its verdict, finding defendants guilty. 
The court denied defendants’ motions for judgment of acquittal and to
dismiss.  Defendants appeal these denials and their convictions.

I.

¶ 15.         Defendants
argue that the trial court erred by not requiring the State to prove beyond a
reasonable doubt that Moose Mountain Forestry, LLC, owned the land on which
defendants were arrested and leased the wind rights to Moose Mountain Wind,
LLC, which in turn leased the rights to GMP.  Defendants raised this
argument through their motion for judgment of acquittal, and we address it de
novo because the issues it raises are strictly matters of law.  State v. Neisner, 2010 VT 112, ¶
11, 189 Vt. 160, 16 A.3d 597 (“In assessing the trial court’s ruling on a
question of law, we apply a de novo standard.”).

¶ 16.         Although
their traits may overlap, ownership and possession are distinct legal
concepts.  Ownership is the set of rights and duties allowing one to use,
manage, alter, or convey property.  See In re Interim Bylaw, Waitsfield,
170 Vt. 541, 543, 742 A.2d 742, 744 (1999) (mem.) (use of land for residential purposes is one “strand”
within owner’s “bundle of rights” (citing Keystone Bituminous Coal Ass’n v. DeBenedictis, 480
U.S. 470, 497 (1987))); Alger v. Dep’t of Labor & Indus., 2006 VT
115, ¶ 31, 181 Vt. 309, 917 A.2d 508 (citizens acquire “bundle of rights” when
they obtain title to property (citing Lucas v. S.C. Coastal Council, 505
U.S. 1003, 1027 (1992))); accord Black’s Law Dictionary 1215 (9th ed. 2009)
(defining ownership as the “bundle of rights allowing one to use, manage, and
enjoy property, including the right to convey it to others”).  These
rights and duties can be separated by the owner and given to other parties, as
when a landlord leases property to a tenant.

¶ 17.         Possession,
meanwhile, is a more limited right; it is the physical or constructive control
of property.  See Lyon v. Parker Young Co., 96 Vt. 361, 363-64, 119
A. 881, 881-82 (1923) (holding that possession was established by enclosing
land with wire fence, maintaining and tapping trees, and pasturing land);
accord Black’s Law Dictionary 1281 (9th ed. 2009) (defining possession as
“[t]he fact of having or holding property in one’s power . . .
[t]he right under which one may exercise control over something”).  The
right to possess property—or “lawful possession”—may flow from one’s ownership
of property but it also may flow from other sources, such as a lease, a court
order, or even the circumstances surrounding the property’s use.  See,
e.g., Darling v. Ennis, 138 Vt. 311, 314, 415 A.2d 228, 231 (1980)
(affirming that ejection action could not be maintained because plaintiff had
been disseized of property through adverse
possession).

¶ 18.         The
unlawful trespass statute protects parties from intrusions on their lawful
possession of land.  13 V.S.A § 3705; People v. Johnson, 906
P.2d 122, 125 (Colo. 1995) (“[T]respass is an
invasion of one’s interest in habitation or possession of a building, rather
than an invasion of one’s ownership interest in a building.”).  Because it
is not mentioned in the statute, proof of ownership is not an element required
for an unlawful trespass conviction, so long as lawful possession is
established.  See State v. Allen, 146 Vt. 569, 572, 507 A.2d 975,
977 (1986) (“The statute creates and defines the offense.”); State v. Shady,
100 Vt. 404, 405, 138 A. 777, 777 (1927) (“In the matter of creating and
defining criminal offenses, the Legislature has a very broad discretion, with
the exercise of which the courts can interfere only when constitutional
limitations plainly have been transgressed.”)  Other jurisdictions have
held that even an owner may be prosecuted under the statute if he is not in
lawful possession.  See Johnson, 906 P.2d at 125 (holding that
defendant’s arguable ownership interest does not bar his prosecution for
trespass because he had no possessory interest in property); Langston v.
State, 855 S.W.2d 718, 721 (Tex. Crim. App. 1993) (holding that ownership
is not element of criminal trespass and therefore does not have to be proved
unless pleaded by State).  Therefore, the State’s burden was to prove
GMP’s lawful possession of the land on which defendants were arrested.  As
we note below, the State carried this burden by presenting evidence of the
surrounding circumstances.

II.

¶
19.        
Defendants also argue that the trial court’s refusal to grant their
request to charge amounted to a violation of their constitutional right to
defend themselves.  We address this argument by determining whether the
court properly exercised its discretion to instruct the jury on the law. 
We assign error only if the instructions, as a whole, did not “breathe the true
spirit of the law” and thereby undermine our confidence in the verdict.  State
v. Myers, 2011 VT 43, ¶ 22, 190 Vt. 29, 26 A.3d 9 (quotation omitted); see State
v. Carpenter, 170 Vt. 371, 374-75, 749 A.2d 1137, 1139 (2000).

¶
20.        
Defendants’ requested instructions would have been error.  As we
have observed, the requested instructions would have replaced the statute’s
emphasis on lawful possession with an emphasis on ownership.  13 V.S.A § 3705(a).   Moreover, when a party
disputes a boundary and therefore contests ownership of the portion of land
encompassed by the disputed property line, that party
may choose to institute a legal action.  But the mere initiation of a suit
does nothing to alter the status quo, nor does the law permit parties to press
their as-yet-unresolved possessory claims by extra-judicial occupation. 
See Anello v. Vinci, 142 Vt. 583, 586,
458 A.2d 1117, 1119 (1983) (defendant tenant maintained possession of rental
unit throughout ejection proceedings, not landlord); Darling, 138 Vt. at
311, 415 A.2d at 230 (defendant adverse possessor maintained possession of land
throughout court proceedings even though plaintiff claimed ownership). 

¶
21.        
When considered as a whole, the court’s instructions accurately conveyed
the law’s requirements to the jury.  13 V.S.A
§ 3705(a).  Specifically, they identified the State’s burden
of proving lawful possession of the land on which defendants were arrested and
also explained the concept of lawful possession.  The trial court’s
explanation, made through its clarification of the third element of unlawful
trespass, aligns with the accepted meaning of the term.  See Lyon,
96 Vt. at 363-64, 119 A. at 881-82.

¶
22.        
The jury had ample evidence from which it could properly determine the
issue of lawful possession and, ultimately, defendants’ guilt.  As we have
said, lawful possession may flow not only from ownership, but also from leases,
court orders, or the circumstances of land’s use. Darling, 138 Vt. at
314, 415 A.2d at 231.  Jurors heard testimony
from the wind farm’s project manager regarding the leases and easements GMP had
obtained from Moose Mountain Forestry, the record owner of the property where
defendants were arrested.  Copies of GMP’s recorded leases and easements,
which described the location where defendants were arrested as belonging to
Moose Mountain and being leased to GMP, were admitted into evidence.  The
manager testified that the easements gave GMP the exclusive right to restrict
access to the parcels.  Pursuant to that contractual authority, the
manager testified, GMP took steps to exclude people from the parcels, including
posting no-trespassing signs and stationing a twenty-four-hour security
guard.  Indeed, two of the defendants testified that they specifically
passed the boundary line into the disputed property.  Finally, Donald
Nelson himself testified regarding the recorded survey on which the leases,
easements and GMP’s site plans were based.  Nelson indicated that he and
his wife had, in fact, agreed to the boundary it displayed and had signed the
survey before a notary.  

¶
23.        
  Although jurors heard testimony regarding the existence of a
civil dispute in which the Nelsons now contend that the boundary line is
inaccurate, jurors had ample evidence from which to determine beyond a
reasonable doubt that each element of the criminal trespass statute was met:
that GMP was in rightful possession of the land on which defendants were
arrested based on the recorded easements and surveys, that the Nelsons did not
have the authority to consent to defendants’ presence on the land, that
defendants had in fact entered the land, and that defendants had been warned
that they were trespassing.  

¶ 24.         The
jury’s verdict is not undermined by the court’s limitation of evidence
concerning the civil case between GMP and the Nelsons.  Defendants sought
to introduce evidence that would allow the jury to resolve the boundary-line
dispute that existed between GMP and the Nelsons.  Defendants were
apparently proceeding under the theory that if they could show in this criminal
trial that the existing property lines were inaccurate and that the Nelsons
were later entitled to be declared the so-called true owners of the property
where defendants were arrested, then GMP could not have obtained a lawful right
to possess that same property from its lessors.
 That is simply not the case.  As we noted above, a civil court’s
acknowledgement of a prima facie case for trespass based on a disputed boundary
is not the law’s final determination of land ownership.  Consequently, the
Nelsons’ mere presentation of that prima facie case in the civil suit does not
destroy GMP’s right to possess.  See Anello,
142 Vt. at 586, 458 A.2d at 1119; Darling, 138 Vt. at 311, 415 A.2d at
230.  Unless and until the civil court alters the status quo, GMP
remains in lawful possession.  Indeed, by denying the Nelsons’ request for
a temporary restraining order, which would have prevented GMP from occupying
the disputed land, the civil court implicitly recognized the status quo pending
further judicial action.  Therefore, the jury was free to review the
evidence and consider the proper legal question: whether defendants had the
consent of the person in lawful possession of the land on which they were
arrested.

¶ 25.         For
this same reason, we observe that delaying the criminal trial pending the
resolution of the civil boundary dispute would not have led to a different
result. The relevant question in defendants’ criminal trial was whether GMP was
in lawful possession of the property where defendants were arrested at the time
of their arrest.  The trial court therefore properly exercised its
obligation to bar irrelevant evidence, V.R.E. 401 and 402, and its discretion
to exclude potentially confusing or unnecessarily time-consuming evidence of
limited probative value.  See V.R.E. 403.

III.

¶
26.        
Defendants finally argue that the trial court erred in not vacating
their convictions in the interests of justice.  They label their
prosecution an “abuse of process.”  Defendants appear to argue that the
State simply may never prosecute a criminal trespass when there is a pending
civil dispute over the land’s ownership, even if the State is not taking a side
in the civil suit through its prosecution.

¶
27.        
The court has the discretion to dismiss an indictment if dismissal will
serve the interests of justice.  See V.R.Cr.P.
48(b)(2).  Because this rule involves fundamental
separation-of-powers considerations, the court applies it only in extraordinary
circumstances, exercising its discretion to ensure that it does not improperly
interfere with the State’s right to prosecute.  State
v. Sauve, 164 Vt. 134, 140, 666 A.2d 1164, 1167
(1995).  We attribute error to the trial court only if it abused
this discretion.  Id. at 143, 666 A.2d at 1169.

¶
28.        
Defendants cite cases that stand for the principle that the State should
not prosecute a criminal case for the sole purpose of resolving a civil dispute
in favor of a particular party.  See United States v. Miller, 659
F.2d 1029, 1030 (10th Cir. 1981) (holding, in trespass case involving dispute
over ownership of land in possession of Indian tribe, that criminal process
should not be used for purpose of making final determination of whether
defendant could enter land).  However, several facts persuade us both that
the State is not attempting to resolve the ownership dispute in favor of GMP
and that defendants’ prosecution serves the interests
of justice.  Moreover, these facts show why it is important not to adopt a
per se rule barring the State from prosecuting a criminal trespass when there
is a pending civil dispute over the land’s ownership.

¶
29.        
First, defendants’ illegal actions were not without an immediate
victim.  Defendants exposed GMP to substantial harm by purposefully
interfering with its construction schedule and threatening its eligibility for
federal tax credits.  Second, our prohibition on self-help to further a
land claim precludes the Nelsons or their guests from entering the disputed
land.  See Dustin v. Cowdry, 23 Vt. 631,
633 (1851) (holding that party claiming right of possession must exercise it
through lawful remedy, such as action for trespass, not by unilaterally
evicting another by force).  Third, defendants’ convictions do not lead to
an unfair result because a civil court’s later determination that the Nelsons
own the disputed land would do nothing to change the fact that GMP was in
lawful possession before such a ruling.  We therefore do not find that the
trial court abused its discretion by not dismissing the case in the interests
of justice.

           
Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief
 Justice
  
 
  

¶ 30.         DOOLEY,
J., dissenting. 
There is a disconnect in this case between the trial
court’s charge to the jury and the defense allowed by the court and presented
by defendants.  The parties at trial submitted conflicting evidence on
whether defendants were arrested on land owned by the Nelsons—neighboring
landowners who allegedly permitted defendants to be there—or by those who
leased the property to Green Mountain Power (GMP) along with easements allowing
the company to exclude others.  Nevertheless, despite defendants’ specific
request to do so, the trial court refused to address the question of ownership
as part of the jury’s consideration of whether GMP had “lawful possession”—an
essential element of the criminal trespass charge—of the land upon which they
were arrested.  See 13 V.S.A. § 3705 (criminalizing entering or remaining
on land after notice of trespass absent legal authority or consent of person
“in lawful possession”).  The court’s failure to address ownership in its
jury instructions undoubtedly confused the jury after it had just heard
evidence focusing almost exclusively on who owned the land in question and
whether defendants had permission to be on that land.  The questions posed
by the jury during its deliberations highlighted its confusion, but the court
nonetheless refused to clarify or elaborate on its initial truncated
instruction regarding the element of lawful possession.

¶ 31.         While
the trial court was aware that GMP’s claim of lawful possession derived from
leases entitling the company to easements over land that was the subject of a
civil boundary dispute, the court’s apparent concern about not resolving that
dispute in the context of a criminal trial led it to ignore the necessity of
instructing the jury on the ownership component of lawful possession in this
case.  In essence, the court left the jury on its own to figure out how to
deal with the evidence presented on ownership of the disputed land.  In my
view, absent any explanation of the relevance or significance of the
conflicting evidence on who owned the land upon which defendants were arrested
for criminal trespass, the charge was inadequate for the jury to consider the
principal defense in the case and to determine whether the State had met its
burden of satisfying the element of lawful possession under the circumstances
here.  As the result of the court’s instruction allowing the jury to find
lawful possession based on nothing more than control of the land, defendants
were convicted of criminal trespass, subjecting them to fines and potential
incarceration, without regard to whether they had, or reasonably believed that
they had, the consent of the true owners of the property upon which they were
arrested.  Accordingly, I dissent.

¶ 32.         From
the beginning, this case centered around who actually owned the land upon which
defendants were arrested and whether defendants had permission to be on that
land from landowners with a good faith claim of ownership.  At the time of
defendants’ arrest, there was a civil case pending in which the Nelsons, from
whom defendants allegedly had consent to enter the property, claimed ownership
of that land.  As the trial court indicated in denying the State’s motion
in limine, the State sought to prohibit defendants from presenting testimony of
a surveyor and Mr. Nelson “regarding the location of the boundary and to show
that the property where they were located was not in the lawful possession of
GMP.”  Although the court shared the State’s concern that the
criminal proceeding not become a forum to litigate the pending civil action, it
acknowledged defendants’ “fundamental constitutional right” to defend
themselves by presenting relevant and material evidence on each and every
element of the alleged criminal offense.  Therefore, the court denied the
State’s motion in limine with the understanding that defendants’ evidence “will
be narrowly targeted to the question of the location of the boundary which,
based on [defendants’] representations regarding the location of the defendants
and the location of the disputed boundary lines, is relevant to the question of
whether the particular land where [defendants] were located was in the lawful
possession of GMP.” 

¶ 33.         In
the majority’s view, this statement demonstrates that the trial court intended
to limit the evidence to allow the jury to determine only “the exact location
of the existing boundary, rather than the location of the boundary claimed by
the Nelsons in the civil suit.”  Ante, ¶ 9. 
That is not what the court said, however.  And, in fact, the court
ultimately allowed the parties to present evidence contesting who owned the
land upon which defendants were arrested, not just whether that land was part
of the land leased to GMP as depicted in the easement agreements and the deeds
and maps referenced therein.

¶ 34.         In
her opening argument, defense counsel told the jury that the State would be
unable to prove that GMP had lawful authority to exclude defendants from the
land upon which they were arrested.  She explained that: (1) a surveyor
would testify that the land in question belonged to the Nelsons and was not
part of the land leased to GMP; and (2) Mr. Nelson would testify that he gave
defendants permission to enter his land and even advised them as to the
location of the boundary line. 

¶ 35.         The
State called four witnesses.  The first, the arresting law enforcement
officer, acknowledged on cross-examination that defendants told him they
believed they were on the Nelsons’ property.  The second, a GMP official,
testified that defendants were arrested on land that was part of the land over
which GMP had obtained easements allowing it to exclude others.  The
third, Mr. Nelson, acknowledged the existence of a recorded survey relied upon
by GMP and a prior boundary agreement regarding the land leased to GMP, but
insisted on cross-examination that the agreement did not include the land upon
which defendants were arrested.  The fourth, a surveyor, was
permitted to testify only as a fact witness to lay a foundation for admission
of the recorded survey.

¶ 36.         At
the conclusion of the State’s case, defendants asked the court to enter a
judgment of acquittal, contending that the State had failed to prove that GMP
had obtained lawful possession through rightful ownership of the land upon
which defendants were arrested.  Defendants argued that, in this
case, lawful possession—an element of the charged crime—was derived from, and
dependent upon, lawful ownership of the landowners from whom GMP had obtained
its easements.  The court denied the motion, stating that “the
testimony is not entirely clear on that issue” and the law had “to do not only
with ownership, but . . . with
lawful possession of the property itself.” 

¶ 37.         Defendants
then presented the expert testimony of a surveyor, who opined that the boundary
agreement between the Nelsons and a neighboring landowner did not cover the
land upon which defendants were arrested and that the recorded survey relied
upon by the State did not correctly represent the boundary of the Nelsons’
property.  Finally, two of the individual defendants testified that
they were arrested on land they believed was owned by the Nelsons and that Mr.
Nelson had allowed them to enter that land.

¶ 38.         Following
a charge conference, defendants proposed a jury instruction stating, in
relevant part, that: (1) lawful possession means the right to exercise control
over property; (2) defendants could not be found guilty of criminal
trespass if someone other than GMP had a superior right to possess the land in
question and gave defendants consent, or defendants reasonably believed they
had consent, to be on that land; and (3) it was for the jury to determine
whether defendants had lawful authority to remain on the disputed land through
the consent of the person with a superior right to the land.

¶ 39.         The
court rejected defendants’ proposed charge and instead instructed the jury as
follows regarding the “lawful possession” element of the criminal trespass
statute:

The third essential
element is that each defendant acted without either legal authority or the
consent of the person in lawful possession.  Here, possession means actual
control by physical occupation and exercise of that control.  Lawful
possession means a rightful possession authorized by law, and it means the
right to exercise control over the property.

 

When the court asked counsel to
state for the record any objections to the charge, defendant explicitly
objected to “the lack of an instruction on the lawful possession, including the
right to superior ownership of the property” and “to the lack of an intent
element in the charge.” 

¶ 40.         The
State briefly argued in its closing statement to the jury that GMP had an
easement giving it lawful possession of, and the right to exclude persons from,
the land in question.  Defense counsel responded in closing that the State
could not prove lawful possession because it had failed to make a “link between
whoever granted that easement to Green Mountain Power and their ownership of
the property.”  Defense counsel further argued that defendants had
submitted sufficient evidence through their expert witness to create a
reasonable doubt as to whether they were on land lawfully leased to GMP, given
the true boundary line between the Nelsons’ property and the leased land on
which GMP claimed an easement and a right to exclude others.

¶ 41.         During
deliberations, the jurors submitted two questions for the court.  The
first was whether, under Vermont law, the current owner or the party disputing
ownership had control of disputed property pending resolution of the
dispute.  The second was whether there was a current legal dispute
regarding the land in question.  In response, the court told the jury that
it would have to make the best of the legal instructions given and that no new
evidence could be presented.

¶ 42.         The
jurors’ questions highlighted the apparent lack of a connection between the
case presented to the jury and the instruction it received on lawful
possession.  As shown above, the conflicting evidence at trial centered on
whether the boundary line set forth in the easement agreement and the documents
referenced therein was the true boundary line.  Defendants presented
evidence indicating that that boundary line was inaccurate and that defendants
were actually on the Nelsons’ property with the Nelsons’ consent when they were
arrested.  The court instructed the jury only that lawful possession means
“rightful possession authorized by law” and “the right to exercise control over
the property,” without any further explanation.  The court’s charge
simply equated “lawful possession” with the right to control the land, without
any explanation of the significance of the parties’ evidence disputing
ownership of the land upon which defendants were arrested or of what was
required to show a right to control the land.

¶ 43.         Nor
did the charge adequately instruct the jury on the issue of intent.  After
the court instructed the jury on each of the elements of the crime, it stated
that: “In the above elements, I have used the words intent or intention.”  In
fact, the court never mentioned either word in instructing the jury on the
elements of the crime.  The court then proceeded to state that “[a]cting with intent means to do an act on purpose.”  The
court’s instruction did not give the jury any guidance on whether defendants
could be convicted even if they intended to remain only on property that they
reasonably believed was owned by the Nelsons, who gave them permission to be
there.  See Larsen v. Fort Wayne Police Dep’t, 825 F. Supp. 2d 965,
978 (N.D. Ind. 2010) (stating that reasonable belief that one has right to be
on property of another defeats mens rea requirement of criminal trespass statute); Myers v.
State, 130 N.E. 116, 117 (Ind. 1921) (stating that criminal intent is essential
element of criminal trespass and thus no conviction will lie for that offense
if accused entered land under bona fide and reasonable belief that he or she
had permission from rightful owner to do so).

¶ 44.         In my
view, the charge was inadequate under the circumstances of the case, and thus
the convictions must be overturned and the matter remanded for a new
trial.  The State’s claim of lawful possession is based upon GMP obtaining
easements from the rightful owners of the land.  Therefore, the State was
required to prove that GMP obtained the easements from the lawful landowners
for defendants to be convicted of criminal trespass.  The State in fact
attempted to do so through witnesses and exhibits concerning the easement
agreements and the documents referenced therein, but the court’s jury
instruction failed to link ownership to GMP’s claim of lawful possession of the
disputed land.  Therefore, the jury was permitted to convict defendants
based solely upon GMP’s possession of the land without any proof that the
possession was lawful and notwithstanding defendants’ presentation of evidence
that they reasonably believed they were on land with the permission of the
rightful owners.

¶ 45.         Understandably,
the trial court was concerned with confusing the jury by turning a criminal
trial into a hearing on a civil boundary dispute.  But the boundary
dispute was at the heart of defendants’ defense and took up most of the
evidence presented to the jury.   The court could have alleviated its
concerns about importing the boundary dispute into the criminal trial by
granting the State’s motion to continue the criminal trial until the civil
dispute was resolved.  Indeed, nothing would demonstrate a miscarriage of
justice more than the criminal conviction for trespass followed by a civil case
determination that the land on which defendants stood to protest was owned by
the Nelsons and was not lawfully possessed by GMP.  A criminal case is an
inappropriate way for the State to resolve a boundary dispute.  See People
v. Miller, 101 N.E.2d 874, 877 (Ill. App. Ct. 1951) (noting well-settled
law that criminal trespass statute “cannot be invoked to try disputed rights of
title”).

¶ 46.         In
effect, in the absence of a continuance, the boundary dispute had to be tried
as a civil case within the criminal prosecution.  As a result, the court
had to provide an instruction requiring the State to prove every element of the
charged criminal offense, including lawful possession based on rightful
ownership by the landowners from whom GMP obtained the easements giving it the
right to exclude defendants from the land in question.

¶ 47.         I
emphasize again that this is a criminal rather than a civil matter.  The purpose
of a criminal trespass statute “is to punish those who willfully or without a
bona fide claim of right commit acts of trespass on the land of another.”
 Woods v. State, 703 N.E.2d 1115, 1117 (Ind. Ct. App. 1998)
(holding that defendant’s “belief and bona fide claim of right defeat the mens rea requirement of the
criminal trespass statute and render her conviction erroneous.”).  It is
not enough for the State to show merely that defendants entered upon and
refused to leave the subject property when requested to do so; rather, “it is
also incumbent to prove that [defendants’] presence on the land constituted a
trespass in the sense that defendants invaded another’s exclusive right of
[lawful] possession.”  People v. Sweetser,
140 Cal. Rptr. 82, 86 (Cal. Ct. App. 1977).

¶ 48.         Under
the circumstances of this case, I believe that the trial court was required to
apprise the jury that GMP’s claim of lawful possession was dependent upon
ownership by those from whom GMP obtained its easements giving it the right to
exclude others, and that defendants could not be convicted of criminal trespass
if defendants had a reasonable belief that the true owners gave them permission
to be on the land upon which they were arrested.  Absent such an
instruction, the jury was left adrift as to how to use the ownership evidence
and was free to convict defendants even if they were arrested on land actually
owned by landowners who consented to them being there.  Accordingly, I
respectfully dissent from the majority’s opinion upholding the trial court’s
jury instructions and defendants’ convictions.


  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice